[S. F. No. 7095. In Bank.—June 6, 1917.]

J. F. D. CURTIS et al., Appellants, v. A. H. UPTON et al., Respondents.

[S. F. No. 7096. In Bank.—June 6, 1917.]

A. H. UPTON, Respondent, v. J. F. D. CURTIS et al., Appellants; AMOS H. STINSON, Executor of the Will of Nathan H. Stinson, Deceased, Intervener and Respondent.

EJECTMENT—OWNERSHIP OF LANDS DESCRIBED IN COMPLAINT—PLEADING AND EVIDENCE—ERRONEOUS FINDINGS AND JUDGMENT.—In an action in ejectment to recover the possession of certain tide-lands, where the description as set forth in the complaint showed that parts of the lands were included in two tide-land surveys, the title whereof was shown by the evidence to be vested in the plaintiffs, it was error to find and adjudge that the plaintiffs were not the owners nor entitled to the possession of any of the lands described in the complaint.

ID.—TIDE-LANDS—CONSTRUCTION OF STATE PATENT.—A state patent purporting to convey state tide-lands only should be construed to embrace only tide-lands to which the state held title, and not uplands as to which it had no title.

ID.—FINDING AGAINST OUSTER—EVIDENCE.—In this action of ejectment to recover the possession of certain tide-lands, the description of which in the complaint fixes the southerly corner of the portion of the Bolinas Ranch, lying on the east side of Bolinas Bay, as the beginning point and ending point of the boundaries of the tract of which recovery is asked, it is held that the finding that the defendants had not ousted the plaintiffs from any portion of the land is not sustained by the evidence.

ID.—JUDGMENT—RES JUDICATA.—A former judgment, notwithstanding it may have been erroneous, is conclusive between the parties or their successors in interest in all subsequent actions involving the same questions and properly within the scope of the issues which might have been raised and determined.

ID.—BOUNDARIES — NATURAL OBJECTS — PREFERENCE OVER LINES AND ANGLES.—In determining the position of a tract of land from a description or survey, natural objects referred to as bounds prevail over the measurement of lines and angles.

ID.—DETERMINATION OF POSITION OF LOST NATURAL MONUMENT.—In a controversy involving the actual location of land embraced in a tide-land patent, the description of which commenced and ended at

a corner marked by a natural monument which had long since disappeared, it is the duty of the court to ascertain, if possible, the true position of the corner, accurately, if it could be done, or approximately within reasonable limits if the exact position could not be ascertained with absolute certainty.

ID.—MEANDER LAND ALONG SHORE LINE.—Where a meander line of land included in a patent is run to approximately locate a shore line and to afford the means for calculating the area of the land granted, the shore line constitutes the real boundary.

ID.—ANSWER—QUIETING OF TITLE—WRIT OF POSSESSION.—In an action in ejectment, where the answer of a defendant, though denominated an answer, contains all the allegations necessary to a cause of action to quiet title or determine conflicting claims to real property and prays for affirmative relief of that character, and judgment is rendered in defendant's favor, such judgment is in effect a judgment declaring and quieting his title, and a writ of possession may issue to place him in possession, if he be out of possession, or to restore him thereto if the losing party re-enters.

APPEALS from a judgment of the Superior Court of Marin County, from an order denying a new trial, and from an order refusing a Writ of Restitution. Edgar T. Zook, Judge.

The facts are stated in the opinion of the court.

Robert Harrison, Thomas P. Boyd, Morrison, Dunne & Brobeck, and Edward Lynch, for Appellants.

George H. Harlan, and R. H. Countryman, for Respondents.

SHAW, J.—The above-entitled actions involve the same controversy. Case No. 7095 is an action in ejectment and the plaintiffs J. F. D. Curtis and H. L. Curtis appeal from the judgment and from an order denying their motion for a new trial. In case No. 7096 the same persons appeal from an order denying their application, as successors of A. D. Easkoot, for the issuance of a writ of restitution upon a judgment entered in said action in favor of said Easkoot against the plaintiff and intervener. We will consider the cases in the order of their number on our calendar.

1. No. 7095.   CURTIS v. UPTON.

The complaint in this case alleges that plaintiffs, "by themselves and by their predecessors in interest," were, on Novem-

ber 9, 1905, the owners, seised in fee, and possessed of the parcel of land described as follows:

"Beginning at the post placed by the United States Surveyor at the southerly corner of that portion of the Baulinas Rancho, which lies on the east side of Baulinas (also spelled Bolinas) Bay, said post being South, $28\frac{1}{2}°$ East, fifteen and 80/100 (15.80) chains from the Northwest corner of the Northeast quarter of section No. 33, in Township No. 1 North, Range No. 7 West, M. D. M., said post also being South $51\frac{1}{2}°$, West six chains 30 links, and thence South $38\frac{1}{2}°$, East fourteen (14) chains from the house of Captain Easkoot as it stood in the month of October, 1858, thence following the line of said Rancho, as described in the patent therefor executed by the United States of America to Gregorio Briones, and recorded in the office of the Recorder of said County of Marin, in Liber A of Patents, at page 146, and along the line of ordinary high water mark on the Northeasterly shore of said Baulinas Bay as it existed in A. D. 1858, North $38\frac{1}{2}°$, West twenty (20) chains, thence crossing the tide lands in said Baulinas Bay and the sand bar and beach adjoining same on the Southwest, South $51\frac{1}{2}°$, West fourteen (14) chains more or less to the line of low water of the Pacific Ocean on said beach, thence along the line of said low water of the Pacific Ocean South $60\frac{1}{4}°$ East twenty-three (23) chains, and thence North $55\frac{1}{4}°$ East five (5) chains more or less to the point of beginning. Being portions of Marin County Tide Land Surveys Nos. 10 and 34."

It further alleges that the defendants without right entered upon said land, ejected the plaintiffs therefrom, and have ever since wrongfully withheld possession thereof. It is further alleged that on November 9, 1905, in a certain action in the superior court of Marin County, being the action involved in the above-entitled case No. 7096, a judgment was duly given and made that said A. D. Easkoot was the owner in fee and possessed of the two tracts of land referred to in the above description as "Tide Land Surveys Nos. 10 and 34," and that neither the said A. H. Upton nor said Nathan H. Stinson had any right, title, or interest in or to said parcels, or either of them; that afterward the plaintiffs succeeded to the title of said Easkoot to said lands, and that said Nathan H. Stinson thereafter died and Amos H. Stinson has been appointed executor of his estate.

The complaint sets forth the descriptions of said tide-land surveys Nos. 10 and 34 as given in the judgment in Upton v. Easkoot. They are as follows:

"Survey No. 10 State Tide Lands, Marin County, Township No. 1 North Range No. 7 West, M. D. M., sections Nos. 28, 29 and 33, fractional portions of said sections more particularly described in the field notes of said surveys as follows: Beginning at the post placed by the United States Surveyor at the southerly corner of that portion of the Baulinas Rancho which lies on the east side of Baulinas Bay, said point being S. $28\frac{1}{2}°$ E. 15.80 chains from the Northwest corner of the Northeast Quarter of section 33, Township No. 1 North, Range No. 7 West, M. D. M., thence following the line of said rancho N. $38\frac{1}{2}°$ W. 72.20 chains, thence crossing the Tide Lands S. $42\frac{1}{2}°$ W. 20 chains to sand bank, thence S. 54° E. 71.70 chains to the place of beginning. Containing 70.17 acres."

"Survey No. 34 State Tide Lands, Marin County, Township No. 1 North, Range No. 7 West, M. D. M., section No. 33, fractional portions of said section being more particularly described in the field notes of said survey as follows: Beginning S. $28\frac{1}{2}°$ East 15.50 chains from the Northwest corner of the Northeast Quarter of section 33 Township No. 1 North, Range 7 West, M. D. M., thence North $60\frac{1}{4}°$ W. 16.36 chains, thence crossing the beach of the Pacific Ocean to low water 5. chains, thence along the Pacific Ocean at low water S. $60\frac{1}{4}°$ East 16.36 chains, South $47\frac{1}{2}°$ East 35. chains, thence crossing the beach to high water mark 5. chains, thence North $47\frac{1}{2}°$ West 35. chains to the place of beginning. Containing 16.45 acres."

Issue was joined upon the allegations that the plaintiffs were the owners of the land first described in the complaint, that the same or any part thereof was a portion of said tide-land surveys, or either of them, that the defendants, or either of them, had ousted the plaintiffs without right from said land or any part thereof, and that the plaintiffs are, or ever have been, the owners in fee or otherwise of any part of said surveys. With respect to the judgment pleaded in the complaint, the answer alleges that it is void because of the uncertainty of the description therein given of the land adjudged to belong to Easkoot.

The court found that the allegations of the complaint to the effect that the plaintiffs or their predecessor in interest,

Easkoot, are or were the owners of the land sought to be recovered and that the defendants had wrongfully ousted plaintiffs therefrom, and each of said allegations, were untrue. With respect to the judgment, it found that it was true that it was therein adjudged that Easkoot was the owner in fee of the lands described (being tide-land surveys 10 and 34 aforesaid), but that it was not true that said judgment declared anything as to the position of said land. There is also a finding to the effect that a surveyor named Dodge, some two months before the action was begun, had set an iron bolt in the ground as the beginning point of the parcel of land sought to be recovered, and that the tract of land attempted to be described in the complaint was the tract beginning at said iron bolt and running thence according to the courses given in the description in the complaint, that said iron bolt was not set at the southerly corner of the Bolinas Ranch, that the tract of land so marked out from said bolt did not include any portion of tide-land surveys Nos. 10 and 34, and that the beginning point of the lands described in tide-land survey No. 10 aforesaid is not at the bolt set by Dodge as such beginning point.

As conclusions of law upon the findings the court stated that the plaintiffs were not the owners of, nor entitled to the possession of, nor in possession of, the tract of land attempted to be described in the complaint, and that the defendants were entitled to a judgment that the plaintiffs take nothing by their said action.

Judgment was thereupon given that the plaintiffs take nothing by their action herein, and that they were not the owners of, nor seised in fee of, nor possessed of, nor entitled to the possession of, the tract of land described in their complaint, "which said tract of land," it proceeds to declare, "is located in Bolinas Township, in the county of Marin, state of California, and bounded and particularly described as follows:

"Beginning at an iron bolt, or pipe, described in the findings in this case as the 'second iron bolt,' which was driven in the ground on the 25th day of August, 1910, by George M. Dodge, a civil engineer and surveyor acting for and on behalf of the plaintiffs in the above-entitled action, which said iron bolt, or pipe, is located as follows: Commencing at an iron bolt which was, on said 25th day of August, 1910, set by the said George M. Dodge at a point upon the site of the house of

Captain Easkoot as it stood in the month of October, 1858, as the site of said house was established by the testimony of Benjamin G. Morse, Peter Crane and Stephen A. Richardson, which testimony was taken at the trial of the above entitled cause, said iron bolt, marking the site of Captain Easkoot's house, being located upon the hill at the north and northeast of the 'arenal' or 'sandspit' dividing Baulinas Inner Bay from the Pacific Ocean and running thence from said iron bolt marking the site of Captain Easkoot's house, South $51\frac{1}{2}$° West 6.30 chains and thence South $38\frac{1}{2}$° East 14 chains to said second iron bolt or pipe and the point of beginning of the lands herein described: Running thence from said second iron bolt, or pipe, North $38\frac{1}{2}$° West 20 chains to a point: thence South $51\frac{1}{2}$° West 14 chains to a point and thence South $60\frac{1}{4}$° East 23 chains to a point and thence North $55\frac{1}{4}$° East 5 chains more or less to said second iron bolt or pipe above referred to, the point of beginning.''

The following map shows approximately the relative positions of the Bolinas Ranch, the Bolinas Bay or Lagoon, and the sandspit, as they appear on the map accompanying the patent from the United States to Briones for said ranch. It also shows the positions of the two tide-land surveys:

The words ''or lagoon'' are not in the patent or survey or on the map.

The westerly and easterly boundaries of survey No. 10, according to the legal effect of the description, coincided with the lines of ordinary high tide as they existed in 1863, when the survey was made. Survey No. 34 purports to cover a strip of tide-land five chains wide, beginning on the outer shore of the sandspit some 16.36 chains from its junction with the main shore and extending along the sandspit to its said junction and thence about 35 chains southerly along the main shore. The land sought to be recovered does not include all of either of these surveys. It embraces a tract in the form of a trapezium, one side of which extends 20 chains north-westerly from the southerly apex of survey No. 10, and the opposite side whereof extends 23 chains along the line of ordinary low tide on the outer shore of the sandspit, whereas survey No. 10 extends to a distance of 72.20 chains along the line of the Bolinas Ranch, and survey No. 34 runs along said outer shore a total distance of 51.36 chains. The center of the sandspit lies above high-water mark and the land sought to be recovered includes a part of this portion of the sandspit within its boundaries.

The patent of the Baulinas Ranch, now usually spelled Bolinas, was introduced in evidence, including the map and field-notes of the survey thereof, to which the patent refers. These documents show that the southerly corner of the part of the Bolinas Ranch lying on the east side of Bolinas Bay was established on the shore of Bolinas Bay "opposite a long sand-bar or 'arenal' whose general course is N. 60° W. slightly curving to the left," and that the surveyor there set a post marked "T. B. 208." This corner is the point of beginning of tide-land survey No. 10. It therefore fixes the position of that survey. The field-notes state that survey No. 10 includes "that tract of tide-land at the southeastern extremity of Bolinas Bay lying between the Baulinas Rancho and the sand-bank which divides Bolinas Bay from the Ocean." The title to tide-land vests in the state. State ownership is also shown of survey No. 34, since its beginning point, according to the calls, is situated N. 28½° W. 30 links from the corner of the ranch, and its lines cross the beach and cover the land between the high and low tide lines of the beach fronting on the Pacific Ocean. The state patents were introduced in evidence showing that in 1871 the state granted to A. D. Easkoot the lands included in these two tide-land

surveys. Easkoot's ownership of the two tracts on November 9, 1905, is also established by the judgment in Upton *v.* Easkoot, as set forth in the complaint, as aforesaid. The fact that this judgment was given, and its terms as well, are admitted by the pleadings. It is also admitted that Easkoot's title subsequently passed to the plaintiffs, at least as early as the decree of distribution of Easkoot's estate. Therefore, it follows that at the time this action was begun the title to these two tide-land surveys was vested in the plaintiffs.

The description of the land sought to be recovered, as set forth in the complaint, shows that parts of it are included in the two surveys, the title whereof was, as above shown, vested in plaintiffs. With respect to the parts so included, the findings and judgment that plaintiffs are not the owners thereof are, on the face of the pleadings and by the terms of the patents introduced in evidence, clearly erroneous.

The state patents purport to convey state tide-lands only, and they could convey none of the upland of the sandspit, for, as it was neither school-land nor swamp-land, the state had no title to that upland. The terms of the descriptions of the surveys imply that no upland was intended to be included therein and they should be construed to embrace only tide-lands, to which the state held title. The plaintiffs therefore failed to establish a record title to this upland along the center of the sandspit.

This action was begun on October 28, 1910. The survey made by Dodge on August 25, 1910, referred to in the judgment, purporting to establish and mark on the ground the precise position of the southerly corner of the Bolinas Ranch, was made for the plaintiffs, apparently in preparation for beginning this action. Plaintiffs' attorneys in drawing the complaint may have supposed that the description set forth therein bounded the tract included in the Dodge survey. But the complaint makes no reference to that survey or to the iron bolt set by Dodge to mark the corner. The description in the complaint fixes the southerly corner of the portion of the Bolinas Ranch lying on the east side of Bolinas Bay as the beginning point and ending point of the boundaries of the tract of which recovery is asked. The answer denies that the defendants have ousted plaintiffs of the possession of the parcel described or any part thereof. This put in issue the true position on the ground of the parcel described, it

being necessary to fix the position in order to determine whether or not the possession of Upton or Stinson extended over any part of it. The survey of Dodge was evidence to prove that position. But it was not conclusive; not even upon the plaintiffs. It could not change the allegations of the complaint, nor change the issue raised thereby from an inquiry as to the true position on the ground of the southerly corner of that portion of the Bolinas Ranch to an inquiry confined to the question whether or not the iron bolt was set upon the right spot. It was the duty of the court to consider all the evidence on the subject, and therefrom to find the fact of the true position of the corner and determine whether or not the defendants had taken possession of any part of the tract claimed by the plaintiffs, when measured from such true position. The findings first declare that the description set forth in the complaint does not include the tract surveyed by Dodge and actually claimed by the plaintiffs, and thereupon, proceeding upon the theory that the land included in the Dodge survey was the only land in controversy, declare that the allegation that the defendants ousted the plaintiffs of a part thereof is untrue. The court was not authorized to do this. It was bound by the issues as framed by the pleadings. The finding that the defendants had not ousted the plaintiffs cannot be considered as sustained by the evidence, unless it appears therefrom that the land in possession of the defendants did not include any part of the land described in the complaint measured from the true location of the ranch corner. The evidence shows that they had taken possession of a part of the tract described in the complaint, if it is located, as it must be, by reference to that corner. The finding that there was no ouster is, therefore, contrary to the evidence, and the part of the judgment relating to the Dodge survey was unwarranted by the pleadings.

The judgment-roll in Upton *v.* Easkoot was introduced in evidence. The complaint of Upton alleged that he was the owner of the land included in the sandspit, describing it by metes and bounds. Stinson's complaint in intervention alleged that Stinson was the owner of the sandspit. Each asked to have his title thereto quieted against all the other parties to the action. Easkoot answered alleging that he owned tide-land surveys Nos. 10 and 34 above described, that

he had been, continuously for more than thirty years next before the beginning of the action, in the exclusive and actual and uninterrupted possession thereof under claim of title thereto by virtue of said state patents to him, and asking judgment quieting his title thereto against the claims of Upton and Stinson. The findings were that neither Upton nor Stinson was the owner or entitled to the possession of the sandspit, or any part thereof, and were in favor of Easkoot on all the allegations of his answer as aforesaid. It was also found that the patent of the United States to Briones, under which both Upton and Stinson claimed their alleged titles, did not include or convey to Briones any portion of the sandspit, that it extended only to the line of ordinary high tide of the bay, *as it existed in October, 1858,* and that Stinson was not the owner of, nor entitled to the possession of, any of the land described in his complaint in intervention which is situated south or southwesterly of the northeasterly shore of Bolinas Bay, sometimes called Bolinas Lagoon, at the line of ordinary high tide thereon as the same existed in the month of October, 1858.

The judgment declared that Upton take nothing by his action, that Stinson should take nothing by his complaint in intervention, that Easkoot was the owner of said tracts of land designated as tide-land surveys Nos. 10 and 34, particularly describing them, and of the other tide-lands claimed in his answer, that neither Upton nor Easkoot had any right, title, or interest in the same, or any part thereof, and that they each be enjoined from asserting any claim thereto.

This judgment is conclusive in favor of Easkoot and in favor of plaintiffs herein as his successors in interest and privies in estate, and against both Upton and Stinson upon all the points decided thereby. "A former judgment between the parties to an action is conclusive in all subsequent actions involving the same questions, not only as to matters actually decided in the former controversy, but as to all matters belonging to the subject of the controversy and properly within the scope of the issues which also might have been raised and determined." (*Southern Pac. Co.* v. *Edmunds,* 168 Cal. 418, [143 Pac. 598] ; *Koehler* v. *Holt Mfg. Co.,* 146 Cal. 337, [80 Pac. 73].) The former judgment operates in favor of or against privies in estate of the original parties, and it "is none the less a bar for the reason that it is erroneous."

(*Lamb* v. *Wahlenmaier*, 144 Cal. 95, [103 Am. St. Rep. 66, 77 Pac. 766].) It follows, therefore, that the judgment in Upton *v.* Easkoot determines, not only that the plaintiffs in case No. 7095 are the owners of all of the land described in the complaint that is embraced within the two tide-land surveys, but also that the northeasterly line of survey No. 10 is the line of ordinary high tide of Bolinas Bay, or Lagoon, as it existed in October, 1858, regardless of its present position. This will be important upon a new trial of the action, if, as the evidence indicates, the winds or waves have made accretions to the shore which have raised the surface of all or a part of tide-land survey No. 10 above the line of ordinary high tide of the bay. In that event the tide line of 1858 will determine the boundary between the lands of plaintiffs and Stinson.

It appears from the evidence that the post set in 1858 to mark the southerly corner of the Bolinas Ranch and all monuments of the tide-land surveys and all traces thereof have long since disappeared. The position of the southerly corner of the ranch can only be ascertained by resort to other calls of the patent and survey. Dodge attempted to locate it by retracing the line from the collateral call to Easkoot's house, the position of which he determined from statements of persons once familiar with it. The court below found that Dodge did not locate the true corner. Proceeding apparently upon the theory that the plaintiffs were bound to prove the true position of said corner and that if they failed to do so, their patents and the judgment in Upton *v.* Easkoot were all ineffectual to establish any right to the land claimed, the court gave judgment against them. This theory might possibly be correct, upon the question of an ouster, if the plaintiffs had produced no evidence of the position of the corner and none had been given on behalf of the defendants. But the testimony of Dodge of his survey retracing the line, according to the courses and distances given in the original survey, back from the site of the Easkoot house to its beginning point was legal evidence of the true site of the corner. In the absence of countervailing evidence, it would have been sufficient proof thereof. (*Weaver* v. *Howatt*, 171 Cal. 308, [152 Pac. 925].) It was rejected as proof, because the resurvey by Richardson, starting from a known natural monument of the original survey on the northeasterly side of the ranch and verified by

other monuments mentioned in the calls of the survey found
by him between that point and the southerly corner, together
with evidence of other inconsistent facts, satisfied the court
that the Dodge location was wrong. But it was the duty
of the court to ascertain, if possible, the true position of the
corner, accurately, if it could be done, or approximately
within reasonable limits if the exact position could not be
ascertained with absolute certainty. (*Weaver* v. *Howatt,*
171 Cal. 307, [152 Pac. 925]; *Weaver* v. *Howatt,* 161 Cal. 86,
[118 Pac. 519].) The Richardson survey was, of itself, evi-
dence of the actual position of the true corner; obviously it
was more convincing to the court below than that of Dodge.
It was the duty of the court to decide the question of fact in
accordance with its own views of the preponderance of the
evidence. The difference in the position of the corner in the
two surveys was about three hundred feet. If the Richard-
son location had been taken as the true one and the lines of
the tide-land surveys run accordingly, it would have shown
that survey No. 10 included some tide-lands of the bay, and
that if the tide line as it existed in 1858 were considered as
the boundary of that survey, it would probably have included
a part of the land described in the complaint. It would cer-
tainly have shown that survey No. 34 was partly within the
boundaries of the land sued for. It is a strip five chains wide
and 51.36 chains long lying between the lines of the ordinary
high and low tides on the beach of the southwesterly side of
the sandspit fronting directly on the Pacific Ocean, and the
place called for as its point of beginning is on its high-tide
line 35 chains from one end, 16.36 chains from the other, and,
according to its calls in connection with those of survey
No. 10, this beginning point is situated north, 28½° west
30 links from the southerly corner of the Bolinas Ranch
aforesaid. In determining the position of a tract of land
from a description or survey, natural objects referred to as
bounds prevail over the measurement of lines and angles.
(Code Civ. Proc., sec. 2077.) The distance, 30 links, must
yield to the calls for the tide lines. Hence, wherever the
point of beginning of survey 34 may be, its southwesterly line
is the low-tide line of the Pacific Ocean and it extends land-
ward to ordinary high-tide line. The lines of the tract sought
to be recovered, as described in the complaint, include a part
of this survey.

The terminus of the southeasterly line of the Bolinas Ranch, it being the common boundary of that and the Saucelito Ranch, is at the line of ordinary high tide of the Pacific Ocean, or of Bolinas Bay, as the case may be. The determining factor as to its location is the position of the common boundary. If it should be determined that its true terminus is on the shore of the ocean southerly of the sandspit, that point must be the southerly corner of the Bolinas Ranch, regardless of the other calls of the survey and patent to Briones. But, it is necessary to add, the judgment in Upton *v.* Easkoot definitely determines that, in that event, the call of the patent in the course next following in the survey, "Thence along the shore of Baulinas bay at ordinary high water mark north 38½° west," must be ignored for the distance between the true corner and the nearest point in the southeasterly extremity of the bay as it existed in 1858. It is to be noted, further, that the course above given, "north 38½° west," is not the exact course of the shore line, but is the course of a meander line run to approximately locate the shore line and to afford the means for calculating the area of the land granted. Where a meander line is run for this purpose, the shore line constitutes the real boundary. (*Foss v. Johnstone,* 158 Cal. 119, [110 Pac. 294]; *Hardin v. Jordan,* 140 U. S. 384, [35 L. Ed. 428, 11 Sup. Ct. Rep. 808, 838].)

The question of the effect of gradual accretions may become important with regard to the lines of surveys Nos. 10 and 34 bordering upon the sandspit. Recently, in *Strand Imp. Co. v. Long Beach,* 173 Cal. 765, [161 Pac. 975], the court decided that the common law that gradual accretions from natural causes to land abutting upon water belong to the owner of the upland applied to lands fronting upon tidal waters and to the shores of the ocean. It may be that accretions to the inner side of the upland of the sand-bar have covered a large part of survey No. 10 and have raised it above the high-tide line. The effect of the judgment in Upton *v.* Easkoot is that neither Upton nor Stinson can claim any title to the sandspit, as against plaintiffs here. Having no right to the sandspit, they could not claim accretions thereto.

We now proceed to the consideration of case No. 7096.

## 2. No. 7096. UPTON *v.* EASKOOT.

This is the case in which, as stated in the previous discussion, judgment was given in favor of Easkoot against the plaintiff, Upton, and the intervener, Stinson.

Easkoot, in his so-called answer therein, alleged his owner-ship in fee, and his possession, of four parcels of land, par-ticularly described, among them being the tracts hereinbefore referred to as tide-land survey No. 10 and tide-land survey No. 34, and prayed judgment that Upton and Stinson be adjudged to have no right, title, or interest therein, and that they each be enjoined from asserting any claim thereto, and for general relief. The judgment was that Easkoot was the owner in fee of the parcels described, that neither Upton nor Stinson had any right, title, or interest therein, and that they each be forever enjoined from making or asserting any claim to the same, or any part thereof, as against Easkoot.

In October, 1910, after the death of Easkoot and after his estate in the lands was distributed to J. F. D. Curtis and H. L. Curtis, they filed a notice of motion for the issuance of a writ of restitution upon said judgment against said Upton and the executor of Stinson, who had died in the meantime. The ground of the motion was that after the entry of said judgment said parties had, contrary to its terms, entered into possession of portions of the land therein ad-judged to Easkoot and were holding possession thereof and claiming title thereto. The portion which they were so claim-ing is the tract sought to be recovered in *Curtis* v. *Upton,* No. 7095. The description thereof is set forth at the begin-ning of part No. 1 of this opinion. The court below denied the motion and refused to order the writ. From this order the said moving parties appeal.

Before the hearing of the motion the moving parties, Curtis and Curtis, began the action, the subject of the first part of this opinion, for the recovery of said parcel in dispute. The motion and the action were heard and tried together upon the same evidence. The court denied the motion upon the same grounds upon which it refused to give judgment for the plaintiffs in the aforesaid action, that is to say, because it was, as it believed, unable to identify upon the ground the exact position of the southerly corner of the Baulinas Ranch. What we have said in the discussion of that case is appli-cable here, and we need not repeat it in full. There was evi-dence from which the position of the corner, and therefrom the position of the land in dispute, could have been ascer-tained with reasonable certainty, and it was the duty of the court to determine the same and make its order accordingly.

Upon the evidence before it, the result would have been a determination that the moving parties were entitled by the judgment to the possession of a part, at least, of the land claimed by them. If Upton or Stinson were in possession of any of those portions, the writ should have been issued. The answer of Easkoot, though denominated by him an answer, contained all the allegations necessary to a cause of action to quiet title or determine conflicting claims to real property, and it prayed for affirmative relief of that character. The judgment in his favor was, in effect, a judgment declaring and quieting his title. It was as effectual for that purpose as if it had been made in a formal action of that nature. In such a case a writ of possession may be issued at the instance of the prevailing party to place him in possession, if he is out of possession, or to restore him thereto if the losing party re-enters. (Code Civ. Proc., sec. 380; *Landregan* v. *Peppin,* 94 Cal. 465, [29 Pac. 771].)

In case No. 7095, the judgment and the order denying a new trial are reversed.

In case No. 7096, the order denying the motion for a writ of restitution is reversed.

Sloss, J., Lawlor, J., Melvin, J., Henshaw, J., and Angellotti, C. J., concurred.