[Civ. No. 2728.  Third Appellate District.—May 7, 1924.]

WM. H. DEVLIN, Executor, etc., et al., Respondents, v. ROBERT POWELL, Appellant.

[1] ADVERSE POSSESSION—ACTION TO RECOVER LAND—COLOR OF TITLE —DEEDS—DESCRIPTION—VERDICT.—In an action to recover possession of a tract of land claimed by plaintiffs by adverse possession founded upon color of title under a deed thereto, the complaint describing the land in a different manner from that in which the deed describes it, where the jury returned a general verdict in favor of plaintiffs for the recovery of the possession of the premises described in the complaint, and in reply to a special interrogatory, "Did the plaintiffs or their predecessors in interest acquire .title by adverse possession to any land not de-

scribed in" such deed? and "if so, describe the land so acquired," answered, "No, the description in" said deed "covers the entire tract in dispute," title by adverse possession is not entirely eliminated from the case, as contended by defendant, by the jury's answer to the special interrogatory, it being apparent that the jury by its general verdict intended to find that the plaintiffs were entitled to recover all the lands described in the complaint and that said deed, though differing in the words used describing the lands conveyed, was in truth and in fact an instrument covering the same tract of land described by different language in the complaint.

[2] ID.—DEEDS—BOUNDARIES—CONSTRUCTION.—The deed in question having spoken as of the date of its execution and delivery and having referred to natural objects as of that date, the interpretation to be given thereto and the intent and meaning of the conveyance must be based upon the circumstances and conditions as they existed upon that date, unless there be something in the instrument manifesting a contrary intent.

[3] DEEDS—DESCRIPTION—CONSTRUCTION.—Where the description in a deed is in anywise ambiguous courts will resort not only to the character and condition of the subject matter to ascertain the intention of the parties, but will interpret the deed in the light of the surrounding circumstances.

[4] ID.—BOUNDARIES—CONSTRUCTION.—Where natural objects or monuments are referred to, courses, distances, lines and angles must give way, if there is any conflict or ambiguity and the natural objects or monuments will prevail.

[5] ID.—BOUNDARIES—NATURAL OBJECTS—TIME.—Unless there is something in the instrument to the contrary, a deed of conveyance referring to natural objects and boundaries speaks as of the date of its execution.

[6] ADVERSE POSSESSION—SECTION 322, CODE OF CIVIL PROCEDURE.— Under section 322 of the Code of Civil Procedure, where a party enters, in good faith, upon a tract of land with color of title, under a deed purporting to convey the tract with specific boundaries, no person being in the adverse possession at the time, and he takes and holds actual possession of a part, bona fide, claiming title and possession of the whole tract described in the deed,

<hr>

2.  See 9 Cal. Jur. 197; 8 R. C. L. 1013.
3.  See 9 Cal. Jur. 305; 8 R. C. L. 1074.
4.  Rules governing in case description of land is uncertain, note, 30 Am. Dec. 734. See, also, 9 Cal. Jur. 293; 4 Cal. Jur. 401 et seq.; 4 R. C. L. 100.
6.  Possession of part of tract of land as possession of whole, notes, 12 Am. Dec. 357; 125 Am. St. Rep. 302. See, also, 1 Cal. Jur. 580; 1 R. C. L. 726.

he is deemed to have possession of the whole tract within the boundaries of the deed.

[7] ID.—TAXES—DELINQUENCY—REDEMPTION.—Where certain of the taxes on property claimed adversely were allowed to become delinquent, but were subsequently paid and redemption was had of the property while the adverse possessors and their grantors were in the undisputed possession thereof, the rights of such adverse possessors are the same as though the taxes had not been allowed to go delinquent.

[8] ID.—TITLE—VERDICT—EVIDENCE.—In such action, the testimony is sufficient to support the general verdict of the jury that the plaintiffs had acquired title to the entire premises described in the complaint.

---

(1) 2 C. J., p. 284, sec. 633.   (2) 18 C. J., p. 280, sec. 248. (3) 18 C. J., p. 279, sec. 245.   (4) 9 C. J., p. 213, secs. 125, 127. (5) 18 C. J., p. 280, sec. 248.   (6) 2 C. J., p. 235, sec. 507, p. 237, sec. 507.   (7) 2 C. J., p. 209, sec. 432 (1926 Anno).   (8) 2 C. J., p. 276, sec. 621.

APPEAL from a judgment of the Superior Court of Sacramento County. H. D. Gregory, Judge Presiding.

The facts are stated in the opinion of the court.

McLaughlin & McLaughlin and Charles B. Harris for Appellant.

Martin I. Welsh and Robert H. Schwab for Respondents.

PLUMMER, J.—Plaintiffs had judgment in an action to recover 28.153 acres of land in the county of Sacramento, state of California; from this judgment the defendant Powell appeals.

The complaint in this action describes certain land situated in the county of Sacramento, and claimed to belong to the plaintiffs, as follows, to wit: "Beginning at a point where the Northerly boundary line of the City of Sacramento in said County and State is intersected by the center line of Twenty-fifth street of said City, if extended northerly, and running thence North 18° 57′ East a distance of 1410 ft. more or less to the South bank of the American River as the same now exists, running thence along the said

---

7. See 1 Cal. Jur. 568.

South bank of said river North 50° 56′ west 462.528 ft.; thence North 63° 32′ West 190.872 ft.; thence North 52° 43′ West 173.25 ft. more or less to a point on the South bank of said American River as the same now exists where said South Bank is intersected by the center line of Twenty-third Street in said City if extended Northerly to said South bank of said river; thence in a Southerly direction along the said extension of the center line of Twenty-third Street to the North boundary line of said City of Sacramento, thence Easterly along the said North boundary line to the point of beginning.'' The foregoing premises are claimed by the plaintiffs by adverse possession founded upon color of title under a deed dated April 23, 1894, executed by Elizabeth H. Hooker, James H. Hooker and Amy May Hooker and delivered to John Mackey (predecessor in interest of the plaintiffs) describing certain lands as follows: ''All that real property situated in the City of Sacramento, County of Sacramento, State of California, bounded and described as follows: Blocks bounded by A and B and Twenty-third and Twenty-fourth streets, A and B and Twenty-fourth and Twenty-fifth streets, C and D and Twenty-third and Twenty-fourth streets, C and D and Twenty-fourth and Twenty-fifth streets, D and E and Twenty-third and Twenty-fourth streets, D and E and Twenty-fourth and Twenty-fifth streets. Also block one bounded by 'A' street and the American River and Twenty-fourth and Twenty-fifth streets, Block two bounded by 'A' Street and American Street and Twenty-third and Twenty-fourth Streets, Block Twenty-nine bounded by American Street and American River and Twenty-third and Twenty-fourth Streets.''

The cause was tried before a jury and a general and special verdict returned. The general verdict reads as follows: ''We, the Jury in the above entitled action find a verdict for the plaintiff for the recovery of the possession of the premises described in the complaint, and for the sum of *No* dollars damages for the withholding thereof by said defendants from the said Plaintiff.'' As to the special verdicts, we need give attention only to question number 4 and the answer of the jury thereto. The question propounded to the jury and known as number 4 reads: ''Did the plaintiffs or their predecessors in interest acquire title by adverse possession to any land not described in the deeds from Eliza-

beth Hooker and others to John Mackey, introduced in evidence as plaintiff's 'Exhibit 1'? If so, describe the land so acquired.'' The jury answered as follows: ''No, the description in the Hooker Deed covers the entire tract in dispute.''

[1] Basing his argument upon the answer of the jury to the special interrogatory number 4, it is urgently insisted by the appellant that title by adverse possession is entirely eliminated from this case. We do not so read the verdict of the jury. It is apparent that the jury by its general verdict intended to find that the plaintiffs were entitled to recover all the lands described in the complaint and that the Hooker deed, though differing in the words used describing the lands conveyed, was in truth and in fact an instrument covering the same tract of land described by different language in the complaint. In other words, if all the elements necessary to constitute adverse possession, under color of title or otherwise, appear from the testimony sufficient to give title to the premises described in the plaintiffs' complaint, then the general verdict is not affected by the answer of the jury to the special interrogatory number 4, unless the terms of the Hooker deed by force of its terms limits or circumscribes the conveyance to a lesser tract of land. Thus, if the Hooker deed and the description set forth in the plaintiffs' complaint refer to the same tract of land, the finding of the jury cannot be held adverse to any claims made by the plaintiffs or to any title upon which they base their claims by reason of the fact that the jury by its general verdict found the plaintiffs entitled to recover the entire tract mentioned in their complaint.

The jury, by its general verdict, has found that the Hookers intended to convey and that the plaintiffs took possession of, became the owners of and are the owners of the entire tract of land for the recovery of which this action was prosecuted.

[2] The Hooker deed was executed and delivered on the twenty-third day of April, A. D. 1894, speaks as of that date refers to natural objects as of that date and the interpretation to be given thereto and the intent and meaning of the conveyance must be based upon the circumstances and conditions as they existed upon that date, unless there

is something in the instrument manifesting a contrary intent.

The controversy as to what the Hooker deed means or as to what is conveyed thereby, arises from the fact that sometime between the years 1862 and 1868 the American River channel was shifted slightly by natural means but principally by artificial agencies a little distance north of where it existed about the year 1850. From 1868 at least down to the time of the execution of the deed relied upon by the plaintiffs, as giving color of title, the American River flowed in the channel identical with the channel as it existed on April 23, 1894. The appellant claims title originating in a Spanish grant and culminating in a United States patent for some 44,000 acres of land known as the Rancho Del Paso. The boundaries of this grant carried the southerly line thereof to the channel occupied by the American River in 1850. Thus, while the complaint in this action describes a tract of land including something over 28 acres, the controversy in fact relates only to 7.05 acres lying between the site of the old channel of the American River as it existed at the time of the grant, and its present location, as definitely fixed in 1868.

For some twenty-six years prior to the execution of the Hooker deed, the American River to all intents and purposes in its present location constituted a natural object as fully and completely as though its course had been entirely created by its own action and not partially by artificial means. The conditions of the entire tract described in the plaintiffs' complaint, including the course of the river, were, at the time of the trial, the same as they had existed for some fifty years, hence the testimony as to the course of the river and its changed location depended upon the testimony of the witnesses who were very young at that period of time and necessarily had but a hazy recollection of the occurrences taking place between 1862 and 1868.

[3] It is a rule of construction that where the description in the deed is in anywise ambiguous courts will resort not only to the character and condition of the subject matter to ascertain the intention of the parties, but will interpret the deed in the light of the surrounding circumstances. "The court will place itself, as nearly as possible, in the position of the parties, and ascertain their intent in the

same manner as in the case of any contract. And in this connection all the facts and circumstances by which the parties and the subject matter were surrounded are relevant and pertinent.'' (4 Cal. Jur. 374.) The Hooker deed was executed and delivered in 1894, hence the condition of the premises in controversy, all the circumstances, including natural boundaries, if any, referred to in the instrument, will be taken into consideration in determining the extent of the premises included within the calls of the deed being interpreted.

[4] It is one of the cardinal rules of construction that where natural objects or monuments are referred to, courses, distances, lines and angles must give way, if there is any conflict or ambiguity and the natural objects or monuments will prevail. (Sec. 2077, Code Civ. Proc.; *Curtis* v. *Upton*, 175 Cal. 322 [165 Pac. 935]; 9 C. J. 314; 4 Id. 401.) ''Where the boundary is designated to be the bank of a river or stream, and courses and distances are also given, the courses and distances yield to the actual line of the stream; for a boundary will be determined by reference to a natural monument, if that can be found.'' (4 Cal. Jur. 402.) [5] It is also a rule of construction that, unless there is something in the instrument to the contrary, a deed of conveyance referring to natural objects and boundaries speaks as of the date of its execution. As applied to this case, the instrument being considered speaks as of April, 1894. There is no reference in the instrument as to the American River channel as it existed or as it is claimed to have existed in 1850. The reference to the American River is as of the date set forth in the deed and of no other time. As between grantor and grantee, the terms of the deed call for the American River as the northern boundary of the tract conveyed as it existed when the deed was executed, unless the instrument by its terms limits the northern boundary to a less distant line. The calls in the deed as to the northern boundary read: ''Also block one bounded by 'A' Street, and the American River and Twenty-fourth and Twenty-fifth Streets. . . . Block twenty-nine bounded by American Street and American River and Twenty-third and Twenty-fourth Streets.'' That the deed contains words of limitation and withdraws the northern boundary from the banks of the American River as the same

existed in 1894 is the contention of appellants and to support such contention the case of *Oldham* v. *Ramsner*, 149 Cal. 540 [87 Pac. 18], is relied upon. That case, however, rests upon the tax title executed by the tax collector of the city of Stockton. The land in controversy was described as lying within the city of Stockton, to wit, lots 9 and 10, block C, in McCloud Addition. There were no such lots. There was a McCloud Addition outside of the city and it is claimed that the description should be interpreted to mean "without" instead of "within." It was held that no such interpretation could be given. Being a tax title, it could not be corrected or interpreted to read to include land other than that expressly described and upon which the tax had been levied. It was not a question between grantor and grantee as to what was intended to be conveyed and what lands were really intended to be included by the description given, but rested upon the technical accuracy of the proceedings leading up to the sale of the property for delinquent taxes and the deed executed in pursuance thereof. The opinion in that case further states what would have been considered if the circumstances were as they are here, that is, the intention of the parties and the lands and premises which the grantor purposed to convey and the grantee to purchase.

This leads us the real point in issue in the instant case. Possession under color of title. In the first place: "Section 322 of the Code of Civil Procedure deals with the constructive adverse possession of land where the possession is taken under color of title. [6] The general rule under this section, as declared by the cases, is, that where a party enters, in good faith, upon a tract of land with color of title, under a deed purporting to convey the tract with specific boundaries, no person being in the adverse possession at the time, and he takes and holds actual possession of a part, *bona fide*, claiming title and possession of the whole tract described in the deed, he is deemed to have possession of the whole tract within the boundaries of the deed." (1 Cal. Jur. 580.) As to what constitutes adverse possession by any person claiming a title founded upon an instrument in writing, section 323 of the Code of Civil Procedure specifies the following requirements as being sufficient:

"1. Where it has been usually cultivated or improved;

"2. Where it has been protected by a substantial inclosure;

"3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing-timber for the purposes of husbandry, or for pasturage, or for the ordinary use of the occupant;

"4. Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated."

There is sufficient testimony in the transcript to sustain a verdict, if believed by the jury, of the taking of possession in good faith by the plaintiffs and their grantors of the entire tract of land described in the complaint and included within the terms of the conveyance, if that conveyance be held to extend the northern boundary to the American River as it existed at the time of the execution of the deed. It appears from the testimony that the plaintiffs and their grantor established a home upon the premises; cultivated the same; used it for pasturage; cut wood along that portion immediately adjoining the banks of the river and made use of the same as a supply for fuel, used such portion for pasturage and generally did all those things which are usual in ordinary course of husbandry to be done and performed and which would be done and performed in the ordinary course of husbandry by anyone claiming and owning the entire tract. It also appears from the transcript, notwithstanding appellant's contention to the contrary, that taxes were paid by the plaintiffs and their grantors for the requisite period of time, that the described property assessed ran to the American River, and that these taxes were paid to the county of Sacramento, state of California, for the requisite period of time. [7] The point is made by appellant that certain of the taxes were allowed to become delinquent, but it appears from the transcript that these taxes were subsequently paid and that redemption was had of the property while the plaintiffs and their grantors were in the undisputed possession and, therefore, the rights of the plaintiffs in this particular are the same as though the taxes had not been allowed to go delinquent. In the case of

*Owsley* v. *Matson,* 156 Cal. 401 [104 Pac. 983], the court says: ''Where a tax on the land adversely possessed is allowed to become delinquent and a sale has taken place, and, so far as appears, a redemption has been made thereof in good faith by the adverse possessor or his successor in interest while in undisturbed possession, such redemption operates as a payment of the tax, within the terms of the statute requiring the adverse possessor to pay the taxes upon the property claimed.'' As we read the general and special verdicts in this case, in the light of what has been said, we find no conflict whatever. We think the jury intended to find and did find that the plaintiffs had been in adverse possession of the entire tract described in plaintiffs' complaint; that possession was taken of the entire tract described in plaintiffs' complaint and by virtue of the terms of the Hooker deed; and, that the plaintiffs for the requisite period of time claimed under color of title and exercised dominion over and maintained and held by adverse possession of all the premises set forth in the complaint. The language of special interrogatory number 4, to say the least, is not very happily chosen and if the jury entertained the views on the subject of adverse possession which we have shown the testimony might support and also that the plaintiffs and their grantors took possession of the entire tract in controversy under the Hooker deed, no other answer than that returned could very well have been made. [8] To conclude the whole matter, we think the testimony is sufficient to support the general verdict of the jury that the plaintiffs had acquired title to the entire premises described in the complaint; and that the judgment should be affirmed irrespective of special interrogatory number 4 and the answer thereto, whether the same be considered or laid aside as meaningless.

The judgment of the trial court is hereby affirmed.

Finch, P. J., and Hart, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 3, 1924.

All the Justices concurred.