[Civ. No. 3555.   Fourth Dist.   Apr. 4, 1947.]

IRVIN HESS et al., Respondents, v. RAYMOND R. MERRELL et al., Appellants.

H. A. Savage for Appellants.

Chester R. Andrews and Arthur C. Wahlberg for Respondents.

MARKS, J.—This is an appeal from a judgment quieting plaintiffs' title to property in Fresno County. The case in fact settles a boundary line dispute, insofar as the parties before us are concerned, to the dividing line between Lot 16 of the Eppinger Tract owned by plaintiffs, and Lot 28 of the same tract owned by Raymond R. Merrell and Gertrude A. Merrell, whom we will refer to as the defendants.

The Eppinger Tract was subdivided into acreage lots in 1907, and the map of the subdivision was duly recorded. Lot 16 is north of an adjoining Lot 28. The division line is clearly shown on the map as a meander line running near the edge of the general level of the district before it breaks downward to reach the level of the bed of Wahtoke Creek, a nonnavigable stream. During ordinary flow the stream is about twenty feet wide but during high water may reach a width of sixty feet. The ground levels are about twenty-five feet above the bottom of the creek and the flow does not approach the crest of the banks or the country-side level north and south of the depression in which the stream flows. The evidence indicates that the southerly line of the ordinary flow of the creek between Lots 16 and 28 varies between one and two hundred feet from the crest on which the boundary line between Lots 16 and 28 runs. At another point on property to the west this distance is about 370 feet. The land between this line and the stream slopes downwards towards the north and is the property in dispute here. It consists of four or five acres. Crops of hay have been grown on it though the evidence indicates that its principal use is for pasture.

Defendants purchased Lot 28 in March of 1932. There was a fence, or at least a part of a fence, along the north boundary line. Mr. Merrell saw the original map of the subdivision on which the boundary lines were clearly marked as well as the flow of the Wahtoke Creek with a clearly indicated space lying between. He found the remnants of a fence along the creek bottom and rebuilt it. It washed out during high water and he finally reconstructed it from near the northeast corner of Lot 28, running thence westerly across the flow of the stream and thence generally southwesterly northerly of the creek bed. He testified that he built the fence across the stream so cattle pastured on both Lots 16 and 28 could get to water. He only claims ownership of the land to the center of the stream so it is clear that this fence was not intended to and

did not mark any actual or claimed boundary between the two lots. Rather it served as a barrier to stock ranging on them.

Both lots in question were assessed according to the descriptions on the recorded map of the Eppinger Tract and taxes were paid by the respective owners on the property thus assessed.

Defendants base their claims to the land lying between the actual north boundary line of Lot 28 and the thread of the stream of Wahtoke Creek on these grounds: (1) User and uninterrupted possession from March 1932, to April 1945, when plaintiffs acquired Lot 16. (2) An alleged agreed boundary line between Lots 28 and 16 running along the thread of Wahtoke Creek. (3) As Wahtoke Creek was a non-navigable stream and allegedly formed the north boundary of Lot 28 the property would extend to the center of the stream. (See Civ. Code, § 830; Code Civ. Proc., § 2077; *Martin* v. *Cooper*, 87 Cal. 97 [25 P. 262]; *Foss* v. *Johnstone*, 158 Cal. 119 [110 P. 294]; *Curtis* v. *Upton*, 175 Cal. 322 [165 P. 935]; *Ford* v. *County of Butte*, 62 Cal.App.2d 638 [145 P.2d 640].)

The trial court found against these contentions of defendants and quieted plaintiffs' title to the property in question here. Mr. and Mrs. Merrell have appealed from the judgment.

It is evident that their claim of a title by prescription must rest on the validity of their claim of an agreed boundary, for if there was no agreed boundary line they paid no taxes on the property in dispute, while if there was an agreed boundary line it may be presumed that the assessment included the land within the agreed boundary and that they paid the taxes. (See *Price* v. *De Reyes*, 161 Cal. 484 [119 P. 893].) It is necessary, therefore, first, to consider the evidence on the question of an agreed boundary line.

The only evidence in the record concerning an agreement as to the boundary line is found in a casual conversation between Mr. G. P. Cummings, now deceased, a prior owner of Lot 16, and Mr. Merrell, which the latter described as follows:

"A. I heard Mr. Cummings down in the creek; I heard some shooting in quail season. Q. What year? A. 1933. I tried to keep the hunters away from the fig orchard and also away from the creek to keep them away from the cattle and if I heard shooting I went down to see who it was. I never met Mr. Cummings. I said, 'Didn't you see the hunting sign there?' Q. Which side of the creek was he on? A. On the south side, on that side I think there. Q. What did he say?

A. 'I wounded a couple of quail and they flew up in here and I was over here to pick them up.' There was another man with him. I don't recall his name. He said, 'My name is Mr. Cummings,' and introduced himself and said, 'I own the property across the creek.' I said, 'My name is Merrill and I am the owner on this side.' He said, 'What place did you get?' I said, 'I have the old Ship place.' He says, 'That is right—' . . . He says, 'That is right; we divide here at the creek,' and after that he went on about his hunting and I said, 'Go on and hunt if you are a hunter, go on and hunt,' and I went back to the house and attended to my business."

Another witness added the following: "Q. What was said about the boundary line, if anything? A. He explained that it came just to the center of the creek at that time. Q. Who said that? A. Mr. Cummings said, 'That is right, it comes to the center of the creek.' "

In the recent case of *Martin* v. *Lopes,* 28 Cal.2d 618 [170 P.2d 881], many cases concerning agreed boundary lines are reviewed. The conditions necessary to bring the rule into play are stated. One of them is the necessity that both adjoining owners be uncertain as to the location of the true boundary line separating their properties. Where such uncertainty exists, they may then agree on a line which may become the actual boundary line dividing their properties. There was no such uncertainty as to the true boundary line proved in the instant case. At the time of the conversation with Mr. Cummings, Mr. Merrell knew or should have known the location of the true line. He testified that he had examined the recorded map of the subdivision of Eppinger Tract. This map clearly showed the true boundary line and that it did not run along the thread of Wahtoke Creek but was distant southerly from it. The trial judge evidently concluded that he should be charged with knowledge of what he saw so he correctly found against the contention of an agreed boundary line, assuming that such an agreement could have been predicated on the very casual conversation we have quoted. This also disposes of the claim of title by adverse possession for in the absence of an agreed boundary defendants paid no taxes on the property in dispute here.

There is no merit in the contention that the northerly boundary line of defendants' property is the thread of the Wahtoke Creek under the provisions of sections 830 of the Civil

Code, 2077 of the Code of Civil Procedure and the cases already cited.

Section 830 of the Civil Code provides in effect that where the land borders on a nonnavigable stream it takes to its center unless the grant indicates a different intent. As we have already observed, defendant's property did not border on the creek but was separated from it by a substantial strip of land. Further, the deed referred to the recorded map which showed this separation. Therefore the intent to make the marked boundary, and not the stream, the northerly boundary of Lot 28 is evident from the grant under which the land is held. Ownership of land north and south of the thread of the stream was vested in an owner other than defendants so the provisions of section 2077 of the Code of Civil Procedure do not apply here.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.