[Civ. No. 17709. First Dist., Div. Two. Mar. 13, 1958.]

GRACE W. STANLEY, Appellant, v. EDWARD L. SHIERRY et al., Respondents.

Angell & Adams, Robert M. Adams, Jr., and Philip H. Angell, Jr., for Appellant.

Tinning & De Lap and Robert Eshleman for Respondents.

BRAZIL, J. pro tem.*—The plaintiff appeals from a judgment which denied a decree requiring defendants to remove a portion of a building from land she claimed to own, from a refusal to quiet her title to the disputed area, and from a decree which quieted defendants' title to the selfsame property.

Lots 14 and 29 in Block 6, Map Number 1, Lafayette Homesites, have a common boundary line roughly half way between Golden Gate Way on the north and Moraga Boulevard on the south. Each lot is 50 feet wide and between 130 and 140 feet long, Lot 14 being a few feet longer than Lot 29.

Both lots were owned by the Moraga Land Company before 1927, and each side traces its claim of right to the disputed portion of Lot 14 from this common source. The deed from the land company to Margaret Thompson, the defendants' predecessor in interest, to a portion of that lot is first in time being dated July 27, 1926, and the deed from the same grantor to Annie Eagles, plaintiff's predecessor in interest, to Lot 29 and a portion of Lot 14 follows on April 21, 1927. The disputed portion covers a substantial area approximately in the middle of Lot 14. The confusion is brought about by the difference in the language used in the two deeds in conveying separate parts of the lot.

In 1955 the respondents (defendants) constructed a building on Lot 14, the rear of which building is 65 feet from Golden Gate Way, the lot's northern boundary. Appellant (plaintiff) claims an encroachment of 49.02 feet at the east boundary and 19.15 feet at the west boundary, covering an area of about 1,500 square feet. She sought removal of the building and a decree of quiet title. The respondents asked and got a decree quieting their title to the land in dispute.

For the sake of clarity, before going any further, the exact

*Assigned by Chairman of Judicial Council.

wording of the granting clauses of the deeds by which the predecessors in interest of the respective parties acquired title from the Moraga Land Company is set forth.

The 1926 deed to Mrs. Thompson conveys "THAT portion of Lots 14 . . . in Block 6, as said lots are delineated and so designated on that certain map [Map No. 1 Lafayette Homesites, etc.] which have the boulevard as the North Boundary line and the center of the creek as the South Boundary line. SUBJECT to an easement for public travel over the roads shown on map above referred to excepting . . . as said lots are delineated on map above referred to, which strip of land shown on said map and thereon designated as Alpha Lane has been closed."

The 1927 deed to Mrs. Eagles conveyed Lot 29 and a portion of Lot 14 in the following manner: "COMMENCING at a point on the Northern line of Moraga Boulevard as per map hereinafter referred to, where said line is intersected by the dividing line between Lots 28 and 29 in Block 6, as per map hereinafter referred to," and then follows a metes and bounds description with an east boundary of 230 feet, a north boundary of 58 feet, a west boundary of 205 feet and a south boundary of 52.48 feet (east and west lines are not at right angles to north and south lines), "BEING all of Lot 29 and a portion of Lot 14 in Block 6 as said lots and block are delineated and so designated on that certain map [Map No. 1 Lafayette Homesites, etc.]."

Lot 14 is 139.17 feet long on the east side and 135.81 feet on the west side; Lot 29 is 130 feet long on the east and 135.64 feet on the west. If there were no prior transfer by the land company, the second deed would definitely convey to Mrs. Eagles the major portion of Lot 14, i.e., to within less than 40 feet of the north boundary on the east and less than 77 feet from the same boundary on the west side.

The recorded map to which both deeds refer shows the location and dimensions of Lots 14 and 29 within Block 6, Moraga Boulevard on the south and Golden Gate Way on the north, and in between in Lot 14, much closer to its north line than the south one, two parallel lines, with courses and distances and the legend "Walnut Creek" contained between those lines.

The metes and bounds description of the second deed when plotted on the recorded map obviously extend the east and west lines of the portion of Lot 14 so conveyed right up to

the center of these surveyed lines called Walnut Creek. The map was recorded October 5, 1914.

The two deeds being recorded at about the same time as they were dated, there is no problem of rights of bona fide purchasers involved. The second deed being so clear in its description, appellant would own all the land within the outside lines so described, unless a portion thereof at the time of its execution and delivery in 1927, did not then belong to the grantor—that it was then not within its power to make such a transfer. It is obvious that the grant deed conveyed only what the grantor owned at the time of its execution; that the grantor could not convey what already belonged to someone else merely by including it within the legal description.

It therefore follows that this case is determined by finding out what portion of Lot 14 the respondents got by reason of the 1926 deed to Mrs. Thompson.

Viewing the evidence in the light most favorable to the respondents, we find that in 1926 there was only one creek running through Lot 14, the course of which channel has not changed from then up to the present time. There was no live or running creek at the place designated on the 1914 map as "Walnut Creek"; at most, there was only an ill defined place there where runoff water came from the highway to join the actual creek. The actual creek crosses the lot at a point many feet south of the lines on the map labeled Walnut Creek. Respondents claim, and the court so found, that they own the northern portion of the lot to the center of the actual running creek as it existed on the ground ever since 1926; and appellant asserts respondents own only that portion of the lot that lies north of the center of the creek as it is shown on the recorded map.

The appellant says the trial court was in error in receiving evidence of the location of a running creek on the ground in 1926, for, the deed to Mrs. Thompson being clear and unambiguous in its reference to a recorded map with its location of creek banks being clearly shown, there was no room for interpretation. An unambiguous document is to be interpreted according to its plain language, and parol evidence may be referred to only to explain an ambiguity which appears on the face of the instrument. (*Barnhart Aircraft, Inc.* v. *Preston,* 212 Cal. 19 at 22 [297 P. 20].) In such a case parol evidence is admitted to dispel doubt, not by showing that the

parties meant something other than what they said but by showing what they meant by what they said.

There was much evidence presented on the conduct of the parties and persons interested in the properties after the original deeds, but no detailed discussion on the subject is needed for the rights of the parties are determined by what was actually done by the execution and delivery of the first deed. If that deed conveyed the northern part of Lot 14 to the center of the actual creek, then the Moraga Land Company did not have any land left to convey lying north of that line when it made the second deed nine months later. It then did not convey the area lying between the center of the actual creek and the center of the creek lines as shown on the map.

■ A consideration of the first deed, without reference to extraneous matters, shows that the court was justified in receiving evidence to explain what was meant by "the center of the creek." The outside lines of the lots and of the block can only be ascertained by reference to the map, but the deed divides the lot as shown on the map in a manner that could not well have been put in percentage form or in feet. The south line of the part transferred is a creek which is a natural monument. This deed does not refer to the center line of "the creek as shown on the map," nor even to "Walnut Creek" or to "the creek as surveyed in 1914"; its reference as a monument for fixing the lot's south boundary is simply: "and the center *of the creek.*" That this description does not necessarily mean the creek lines as shown on the map is borne out by the indefinite language which follows the designation of the lot and block numbers as shown on the map, and that is "which have the boulevard as the north boundary." The map lists the north boundary as "Golden Gate Way," not "the boulevard." If the description was limited in all its detail to the map, this added language about the boulevard would have been surplusage. The very wording of the first deed justifies the inference that the seller used the map for one part of the description, i.e., the outside lines of lots and block and the only creek that was there, as a natural monument, separating the lot into two portions, the part sold and the part retained. This inference is substantiated by a look at the map and finding out what would have happened if this were not so. The conveyance would otherwise have been only of a small irregular shaped piece of ground having no practical use as a building site because the east side would be less than 40 feet long and the west side less than 77 feet. It would also have

left an area of land between the live creek and the part conveyed of little or no use to anyone for it would have no street access except across a creek.

The court was correct in receiving parol evidence to identify the interior lot line, and its finding as to the location of the actual creek on the ground is supported by the evidence. There was then no conflict in the description and no need to look to the rules of interpretation as embodied in section 2077 of the Code of Civil Procedure.

The case of *Devlin* v. *Powell*, 67 Cal.App. 165 [227 P. 231] is factually quite similar to this one. There the plaintiff relied on a deed executed in 1894 describing the property as ''Block one bounded by 'A' Street and the American River and Twenty-fourth and Twenty-fifth Streets, Block two bounded by 'A' Street and American Street and Twenty-third and Twenty-fourth Streets, Block Twenty-nine bounded by American Street and American River and Twenty-third and Twenty-fourth Streets.'' If plaintiff's deed limited him to the line of the river as it is shown on the city map (the American River channel had shifted in the intervening years), he had no color of title north of the lines shown on the map. In affirming the trial court's holding that plaintiff's land extended to the actual river bank as it existed when the deed was executed, the court said: ''The Hooker deed was executed and delivered on the twenty-third day of April, A.D. 1894, speaks as of that date refers to natural objects as of that date and the interpretation to be given thereto and the intent and meaning of the conveyance must be based upon the circumstances and conditions as they existed upon that date, unless there is something in the instrument manifesting a contrary intent.''

The trial court being justified in finding that the disputed area was acquired by respondents by a deed prior in time to that by which appellant acquired any part of the lot, and the description thereof being made certain by parol evidence showing the location of a natural monument (the creek) referred to in that deed, there is no good reason for going on to discuss other points contained in the briefs. It is sufficient to say that, if conduct of the parties after the two original deeds would assist in determining the rights of the parties, then the evidence in the record is ample to support a finding that everyone interested in these properties conducted themselves with regard to it in a manner quite consistent with the decision of the trial court.

The judgment is not a determination that there is any in-

consistency between the deed and the map, nor that there is any deviation from the map. It merely holds that the deed uses the map for a description and location of the outside boundaries of lots and block, and a natural monument as the inside or dividing line between the two portions of one lot separately conveyed. The terms and particulars of the first deed (the one that needs interpretation) is thus not varied in any way.

Judgment affirmed.

Dooling, Acting P. J., and Draper, J., concurred.

A petition for a rehearing was denied April 11, 1958, and appellant's petition for a hearing by the Supreme Court was denied May 7, 1958.