Morris v. Gregory.

---

FRED L. MORRIS V. E. J. GREGORY.

No. 16,139.

SYLLABUS BY THE COURT.

LIMITATION OF ACTIONS—*Fraud—Tax Deed—Payment of Taxes —Principal and Agent—Estoppel.* Where the owner of real estate directed an agent to purchase it at tax sale, take the certificate in his own name and then assign and send the certificate to the principal, and the agent purchased as directed but failed to assign or transmit the certificate, and instead thereof treated it as his own, paying all subsequent taxes thereon, and at the end of four years took out a tax deed fair on its face for himself, and thereafter transferred the property to an innocent purchaser, who entered into possession of the same, and the principal made no demand for the certificate or tax deed nor for possession, paid no subsequent taxes on the property, and made no claim of ownership for about eleven years after the tax sale and about seven years after the execution and recording of the tax deed, at which time the principal executed a deed to the plaintiff, who then brought an action to recover the property, *held,* that, the tax deed under which defendant holds having been of record for more than five years before the litigation was begun, the action was barred by the five-year statute of limitations, and *held,* further, that neither the principal nor the plaintiff is in a position to defeat the tax deed as against the defendant on the theory that the purchase of the real estate by the agent at the tax sale was only a payment of the taxes.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed July 3, 1909. Affirmed.

*Archie D. Neale,* and *Wheeler & Switzer,* for the plaintiff in error.

*Ziegler & Dana,* and *Mayo Thomas,* for the defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action Fred L. Morris alleged that he was the owner and entitled to the possession of certain lots in Independence, and that E. J. Gregory unlawfully kept him out of the possession. He then proceeded and alleged in substance that the defendant claimed an interest in the lots under a quit-claim deed from J. F. McCorkle and wife, who acquired their right from E. T. Mears, to whom the land was conveyed by a tax deed for the taxes of 1893. He attacked the tax deed by alleging that it was void because it was not recorded within the time required by law and that it was void upon its face. It was averred that when Mears purchased the lots at the tax sale he was the agent of the Neosho Valley Investment Company, which then held the title to the lots; that he purchased them for the company and took the certificate as well as the tax deed in his own name, and that he had no interest in the lots except as agent of the company. The plaintiff concluded by an averment that by reason of the facts stated the defendant had no title to the lots, and asked a judgment for possession and for other proper relief. In the defendant's answer, aside from a denial, he alleged that the plaintiff's cause of action was barred by the two-year and also by the five-year statute of limitations. At the trial the court found generally for the defendant, and it is insisted here that on the pleadings and evidence the judgment should have been for the plaintiff.

The tax deed introduced in evidence was fair on its face, but the plaintiff undertook to show that the action of Mears in purchasing the lots and taking the title in himself when he was in fact commissioned to obtain

it for the company operated to avoid the tax deed.
Proof was offered to the effect that for a number of
years Mears had been acting as an agent for the invest-
ment company, and among other things had charge of
the payment of the, taxes on lands in which the com-
pany had an interest, and further that he attended tax
sales and purchased lands for the company. There was
testimony that on August 29, 1894, the company di-
rected him to attend the tax sale to be held in September,
1894, there to purchase lands for the company, a list
of which was furnished him, which included the lots in
controversy; that in obedience to that direction he at-
tended the sale and purchased the lots in question in
his own name for $18.08, and that within a few days
afterward the company sent him a draft which corre-
sponded exactly with the amount necessary to purchase
the lands included in the list sent to him and this draft
he indorsed and transferred to the county treasurer.
In the certificate then issued Mears was named as pur-
chaser, and this certificate was never assigned or de-
livered to the company. On the other hand Mears testi-
fied that although he was the agent of the company he
in fact purchased the land for himself and not for the
company; that the money paid by him for the lots at the
tax sale was his own and not that of the company, and
further that the company never made any demand on
him for the assignment of the certificate, or any claim
that it was the owner of the land, until about eleven
years afterward, when this action was brought. In
that connection he stated that he purchased the land
at the tax sale thinking that the company might want
to take it off his hands, but as it was in bad straits
financially the company never did, and at the time of
the purchase he doubted whether it would be able to do
so and therefore concluded to buy it himself and take
the chances. For defendant it was further shown that
the tax deed, good on its face, was made on August 29,
1898, and duly recorded on the following day; that the

lots were conveyed by Mears to the McCorkles for $500 on April 25, 1900, and by them to the defendant on September 18, 1902. Mears and his grantees have been in possession of the lots since they were conveyed for taxes, and it was shown that the defendant purchased without having any knowledge of the relations existing between Mears and the company or that the company claimed any interest in the property.

The court rightly decided the case in favor of the defendant. Although denied by Mears, it may be said that the evidence strongly tended to prove that he was acting as the agent of the company in making the purchase at the tax sale and that the funds of the company were used in paying for the land. If it be assumed that he acted in that capacity, and committed a fraud upon the company in failing to assign the tax certificate and in subsequently taking a deed to the land in himself, it does not follow that the plaintiff, the grantee of the company, can maintain this action against the defendant, who purchased the land without knowledge of the fiduciary relationship or of the fraud. If the plaintiff's petition is to be interpreted as an attack upon the tax deed and as showing a purpose on the part of the plaintiff to have it set aside for the faithlessness and fraud of Mears, the action was barred by the statute which provides that an action for relief on the ground of fraud must be brought within two years after the cause of action shall have accrued. (Civ. Code, § 18.) If the plaintiff's averment and testimony that Mears purchased the land with the money of the company and took title in his own name when he was instructed to purchase for the company are accepted as true, his conduct operated as a fraud, and to defeat the accomplishment of the fraud the plaintiff was required to act promptly and at least within two years after the discovery of the fraud. Of the early discovery of the fraud by the company there can be no doubt. According to the plaintiff's testimony a letter was written to Mears directing him to attend the tax

sale and purchase the lots for the company with money furnished him for that purpose, and to take the certificate in his own name, assign it in blank, and transmit it with his report of the sale to the company. Mears, it appears, accounted for the other purchases of property included in the same list and transmitted the certificates to the company, but did not assign or transmit the certificate for the land in controversy, as he had been directed to do. The failure to send an assigned certificate or to account for the money furnished him with which to purchase these lots when the September, 1894, sales were reported apprised the company that Mears, in whose name the certificate was taken, was holding out his interest in direct violation of his duty and of the order of the company. Following up this knowledge, they could have learned that he was paying the subsequent taxes on the land and claiming it as his own. There is no claim that the company ever attempted to pay the subsequent taxes on the lots or included them in any list of property on which they proposed to pay taxes. Four years passed before the deed was executed, but it does not appear that the company asked for an assignment of the certificate or complained of the fraud of Mears. The tax deed was recorded and the property was subsequently conveyed to good-faith purchasers, who took and held possession continuously until 1905, when the company waked up and charged that Mears about eleven years before had committed a fraud, of which it must be held to have had early and abundant notice. The plaintiff, who purchased the lots from the company a few months before this action was brought, is in no better position than the company occupied.

It is argued, however, that the action brought is for the recovery of real property, and hence the two-year statute of limitation provided for in section 18 of the code does not apply. The petition contains appropriate averments for an action of ejectment, and it contains besides averments ordinarily used in an action to an-

Morris v. Gregory.

nul and set aside a fraudulent conveyance. Interpreting the petition, however, as one stating a cause of action for the recovery of real property, the action is nevertheless barred by the statute of limitation found in section 141 of the tax law, which reads:

"Any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of lands sold for taxes, or to defeat or avoid a sale or conveyance of lands for taxes, except in cases where the taxes have been paid or the land redeemed as provided by law, shall be commenced within five years from the time of recording the tax deed, and not thereafter." (Gen. Stat. 1901, § 7680.)

The tax deed in question was recorded on August 30, 1898, and this action was not commenced until April 16, 1906. The conveyance having been of record more than five years before the litigation was begun, the case falls within the limitation of the quoted statute. As against this view it is urged that the case is taken out by the provision excluding "cases where the taxes have been paid or the land redeemed as provided by law." The contention is that the purchase of the lots at the tax sale by Mears, the agent of the company, amounted to no more than a payment of the taxes by the company, and that therefore the limitation can not apply. It is an equitable rule of frequent application that an owner of an interest in land can not purchase it at tax sale and acquire a tax title which he can assert as against his cotenant or mortgagee. To prevent an injustice the purchase is deemed to be a payment of the taxes. A cotenant, mortgagee or other person interested in the land against whom the company might be setting up the tax title so acquired would have a right to insist that the purchase at the tax sale was the equivalent of a payment of the taxes, but the company is not in a position to insist that the purchase made in this instance was a payment, as against an innocent purchaser of the land. The plaintiff, its grantee, is in no better position. It would be harshly inequitable if, after author-

izing its agent to purchase land and take the certificate in his own name, and after allowing him to take the title in himself and transfer the same to an innocent stranger, the company could be permitted, after waiting so long a time as has elapsed here, to say that the purchase by Mears should be treated as a payment of taxes. Such inattention and negligence can not be made the basis for equitable relief as against one in the attitude of the defendant.

The contention that the defendant can not be regarded as a *bona fide* purchaser because he is holding under a quitclaim deed is fully answered in *Eger v. Brown,* 77 Kan. 510, and *Ennis v. Tucker,* 78 Kan. 55.

The judgment of the district court is affirmed.