[S. F. No. 5123. Department One.—October 26, 1909.]

## MARIE M. OWSLEY et al., Respondents, v. ISAAC MATSON et al., Appellants.

ADVERSE POSSESSION UNDER COLOR OF TITLE—ENTRY UNDER DEED AND DECREE.—One entering into the possession of a tract of land under a deed and decree of distribution thereof claims under color of title.

ID.—OCCUPATION AND CULTIVATION OF PART OF TRACT.—The actual occupation and cultivation of a considerable part of the tract so claimed is sufficient, under section 322 of the Code of Civil Procedure, to constitute adverse possession of the entire tract up to the limits described in the deed and decree.

ID.—EFFECT OF ADVERSE POSSESSION ON TITLE.—Adverse possession, as defined in the Code of Civil Procedure, if continued for a period exceeding five years, is not only sufficient to bar a claimant under a legal title, but it is also sufficient to create a title. Such possession so continued vests in the possessor a title in fee simple against all other claimants.

ID.—PAYMENT OF TAXES—REDEMPTION FROM TAX-SALE.—Where a tax on the land adversely possessed is allowed to become delinquent and a sale has taken place, and, so far as appears, a redemption has been made thereof in good faith by the adverse possessor or his successor in interest while in undisturbed possession, such redemption operates as a payment of the tax, within the terms of the statute requiring the adverse possessor to pay the taxes upon the property claimed.

ID.—SAME LAND TAXED TO DIFFERENT PERSONS—PAYMENT BY ADVERSE POSSESSOR.—Where the person in the adverse possession of the land had it assessed in his own name, and paid the taxes levied thereon, he fully complied with the conditions of the statute requiring payment of taxes by the adverse possessor. And it is immaterial that the land was also assessed to the owner of the legal title and the taxes paid by him.

MISTAKEN DESCRIPTION IN DEED—PROOF OF DIRECT EVIDENCE UNNECESSARY.—Direct evidence of the manner in which a mistaken description became incorporated in a deed is not an indispensable requisite to a reformation thereof. If the circumstances proven are sufficient to induce the conviction in the mind of a reasonable man that there was a mutual mistake in drawing the deed, and to show clearly in what such mistake consisted, a reformation may be decreed although no witness testifies to personal knowledge of how it occurred.

APPEAL from a judgment of the Superior Court of Humboldt County.  G. W. Hunter, Judge.

CLVI Cal.—26

The facts are stated in the opinion of the court.

Henry L. Ford, and Denver Sevier, for Appellants.

Mahan & Mahan, F. A. Cutler, and Frank Sweasey, for Respondents.

SHAW, J.—The defendants have appealed from the judgment within sixty days after its rendition and entry, and the evidence is set forth in a bill of exceptions. The contention of the appellants is that the decision is not supported by the evidence.

The plaintiffs sued to recover possession of two tracts of land, constituting parts of a larger tract of 43.33 acres, all of which is claimed by the defendants. The pleadings are not verified. The answer denies all the allegations of the complaint, and avers that the action is barred by the provisions of sections 318 and 319 of the Code of Civil Procedure. The defendants also filed a cross-complaint averring that they were the owners of the 43.33 acres described and also that the claim of the plaintiffs is based on a deed to one Boeing, plaintiffs' predecessor in interest, by Jesse C. Greenlaw, defendants' predecessor in interest, dated March 14, 1887, whereby the land claimed by plaintiffs appeared, by mutual mistake, to have been transferred to Boeing, contrary to the intention of the parties, and praying that the deed be reformed and that the title of defendants be quieted. The claim of the defendants that they were the owners of the 43.33-acre tract was based upon an asserted adverse possession and upon the alleged mistake.

Upon the question of adverse possession the court found that the defendants had gained title by that means to a part of the land in dispute and gave judgment in favor of the defendants for that part. As to the remainder of the two overlapping parcels the findings and judgment were in favor of the plaintiffs. The defendants' contention is that the findings on the subject of the mistake and as to the ownership of the parcels adjudged to the plaintiffs are contrary to the evidence. It is unnecessary to consider at length the question of the alleged mistake. We are of the opinion that the court should have found that the defendants had gained a prescriptive title to the entire tract of 43.33 acres by ad-

verse possession thereof under color of title. L. B. Matson does not appear to have any interest. She was evidently made a party defendant because she is the wife of Isaac Matson.

On November 29, 1897, Mary E. Greenlaw and Alfred Greenlaw conveyed to one Edward Greenlaw the 43.33 acres in controversy, describing it accurately by metes and bounds. On June 24, 1898, the decree of distribution of the estate of Jesse C. Greenlaw, deceased, was entered in the superior court and by its terms the 43.33-acre tract in question was distributed to Edward Greenlaw, the tract being accurately described as in the deed last mentioned. On July 15, 1905, Edward Greenlaw conveyed the 43.33 acres by the same description to the defendant, Isaac Matson. From the time of the execution of the deed to Edward Greenlaw in November, 1897, up to the time of the execution of the deed from said Greenlaw to Isaac Matson in 1905, Edward Greenlaw was in the actual possession of and was occupying and cultivating a large part of the 43.33 acres and was claiming title to the whole thereof under the aforesaid deed and decree, up to the boundaries described. When the deed was made to Matson, Greenlaw delivered his possession thereof to Matson, who continued in possession as Greenlaw had been, from that time until shortly before this action was begun, claiming title to the entire tract. Neither the plaintiffs, nor their predecessors in interest, were ever in actual possession of any part of the tract. The action was begun on February 15, 1906. It is further shown that for the years 1899 to 1905, inclusive, this tract was assessed to Edward Greenlaw and that he had paid the taxes thereon. The evidence did not show an actual occupation, cultivation, or inclosure by Greenlaw or Matson of the whole of the parcels awarded to the plaintiffs. It does show, however, an actual occupation and cultivation by them of a considerable part thereof and that they each claimed title to the entire tract up to the limits described in the deed and decree. It is clear that under these circumstances actual possession and occupancy of the entire tract was not necessary in order to give title by adverse possession. That the deed of November 29, 1897, and the subsequent decree of distribution in 1898, constitute color of title cannot be disputed. (*Wilson* v. *Atkinson,* 77 Cal. 485, [11 Am. St. Rep. 299, 20 Pac. 66].) Section 322 of the Code of Civil Procedure provides that when

it appears that an occupant of land enters into possession thereof "under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, or of some part of the property, under such claim, for five years, the property so included is deemed to have been held adversely." By section 323 of the Code of Civil Procedure, it is further provided that for the purpose of constituting an adverse possession by a person claiming under such deed or judgment, the land is deemed to have been possessed and occupied where it has been usually cultivated or improved, or where, although not inclosed, it has been used for the supply of fuel, or of fencing timber for the purpose of husbandry, or for pasturage, or for the ordinary use of the occupant. The evidence to the effect that the major part of the 43.33-acre tract was occupied and possessed in this manner was ample and sufficient to prove the fact and it was without contradiction. Under the provisions of section 322 such possession of a part of the property in this manner is sufficient to extend the claim of adverse title up to the boundaries set forth in the instrument under which the occupant claims. (*Webber* v. *Clarke*, 74 Cal. 16, [15 Pac. 431]; *Christy* v. *Spring V. W. W.*, 97 Cal. 26, [31 Pac. 1110]; *Hicks* v. *Coleman*, 25 Cal. 135, [85 Am. Dec. 103]; *Davis* v. *Perley*, 30 Cal. 639; *Walsh* v. *Hill*, 38 Cal. 487; 1 Cyc. 1125.) Adverse possession, as defined in the Code of Civil Procedure, if continued for a period exceeding five years, is not only sufficient to bar a claimant under a legal title but it is also sufficient to create a title. Such possession so continued vests in the possessor a title in fee simple against all other claimants. (Civ. Code, sec. 1007.)

The tax for the year 1903 upon the assessment of this land to Edward Greenlaw was not paid when it became due. The land was sold therefor and in July, 1905, long before this action was begun, it was redeemed by Edward Greenlaw. The same thing occurred with respect to the taxes in 1904 and the redemption was made by Greenlaw at the same time. It is claimed that this was not a sufficient payment of the taxes, that in order to make his possession adverse within the law

(Code Civ. Proc., sec. 325), the party in possession must pay the taxes, either before they become delinquent, or, at all events, before the property is sold therefor under the law. There is a *dictum* to this effect in *McDonald* v. *McCoy*, 121 Cal. 73, [53 Pac. 421]. In that case, however, it appeared that the person in possession had failed to pay any taxes during his possession and that the redemption took place after he had ceased to have possession or to claim any right thereto. In such a case there may be good ground for saying that a subsequent payment of the taxes by way of redemption from such sale would not relate back to and aid the previous possession so as to make it adverse from the time of the tax-sale to the time of such redemption. In order that a possession may be sufficient to constitute title in fee simple, it would seem reasonable to hold that all the elements necessary thereto must have been in existence at the time the five years are running and that a redemption of taxes after the adverse possession had ceased, could not relate back so as to make it a payment during such period. But where, as in the present case, the tax has been allowed to become delinquent and a sale has taken place and, so far as appears, a redemption has been made thereof, while the party or his successor in interest was in undisturbed possession and all this is done in good faith, we see no reason why the same should not be held to operate as a payment and we think it is sufficient to bring the occupant within the terms of the statute which requires him to pay the taxes upon the property claimed.

The evidence also showed that during the same period, while Greenlaw was in possession of the land in the manner above stated the plaintiffs and their predecessor in interest also listed for taxation in their own names the parcels claimed by plaintiffs and paid the taxes thereon. So far as the record shows each party had his land assessed and paid the taxes thereon in good faith, and in ignorance of the conflicting boundaries of their respective title deeds. It is altogether probable that the lands were listed by each party upon the supposition that the boundaries in the deed coincided with the line surveyed, and to which the possession of the defendants extended, or without taking into consideration the overlap.

In *Cavanaugh* v. *Jackson*, 99 Cal. 672, [34 Pac. 509], it appeared that during three of the years that were required

to constitute the adverse possession, the land had been separately assessed to each party and the tax paid upon each assessment by the party to whom the assessment was made. The court said, referring to the person in possession: "Having had the land assessed to him, and having paid the taxes levied thereon, we think he has fulfilled the conditions of the statute, and it is immaterial as to the number of times the land may have been assessed to and the taxes paid by other parties." And the opinion expressly declined to hold that "priority of payment by the true owner of itself nullifies the time which has actually run and starts anew the statute." It was remarked that, "If such were the law, upon the first day that taxes became due and payable, it would result in a scramble at, or a race to, the tax-collector's office, by the respective parties, to secure priority of payment. The destruction of old titles and the creation of new ones would thus be dependent upon the strongest man or fleetest horse." This was a Department decision and only two justices, Garoutte, J., and Beatty, C. J., joined in this opinion. Harrison, J., concurring, was of the opinion that when the taxes on the land had been once paid by the true owner, a subsequent payment by one in adverse possession would give him no right but that, as the record did not show which party succeeded in making payment first it would be presumed, in support of the judgment below, that the adverse occupant first paid. A similar question arose in *Carpenter* v. *Lewis,* 119 Cal. 18, [50 Pac. 925]. In that case, however, there were not separate assessments. The tax was assessed each year to the true owner, who paid the tax each year, but the adverse occupant also paid the tax each year upon the assessment to the owner. In two of the years his payment was prior to that of the owner, in the other years subsequent thereto. The statement in the concurring opinion of Justice Harrison in *Cavanaugh* v. *Jackson* that if when the adverse occupant offers to pay the tax the same has already been paid by the true owner, a second payment by the adverse occupant will not give him any right, was approved, as applied to the facts involved in the Carpenter case. This opinion also was signed by only two justices. Justice Garoutte concurred only in the judgment, and it being also a Department decision the opinion of the majority is not authority. We are therefore at liberty to adopt the rule

which we believe to be most just and most in accord with the spirit and purpose of the statute. We think the reasoning of the majority opinion in *Cavanaugh* v. *Jackson* is the more satisfactory in its application to the facts in the case at bar. Under the circumstances here appearing, we do not think that the fact that each party had the land separately assessed to ·himself and paid the taxes upon that assessment would operate to defeat the effect of the adverse possession of Matson and Greenlaw in gaining for them a title by prescription.

All the circumstances indicate very strongly that there was a mistake in drafting the deed executed by Jesse C. Greenlaw to Boeing in 1887, and that both parties then and for a long time afterwards supposed and believed that the line described in the deed was the line surveyed along the foot of the hill bounding the land of which Greenlaw retained possession. But owing to the rule that where different inferences may reasonably be drawn from the circumstances proved the decision of the trial court is conclusive upon this court, we cannot interfere with the finding on that point. It is said that the court below made this finding because the evidence gave no explanation as to how the mistake occurred in drawing the deed. There was no explanation by any direct evidence. Greenlaw and the attorney who drew the deed were both dead at the time of the trial and there were no means of proving the facts attending immediately upon the writing and execution of the deed. It may be said, however, that direct evidence of the manner in which a mistaken description became incorporated in a deed is not an indispensable requisite to a reformation thereof. If the circumstances proven are sufficient to induce the conviction in the mind of a reasonable man that there was a mutual mistake in drawing the deed and to show clearly in what such mistake consisted, a reformation may be decreed although no witness testifies to personal knowledge of how it occurred.

Because of the finding on the subject of ownership by adverse possession the judgment is erroneous and cannot be allowed to stand.

The judgment is reversed.

Angellotti, J., and Sloss, J., concurred.