## AGGELOS v. ZELLA MINING CO. et al.

No. 6217.   Decided November 20, 1940.   (107 P. 2d 170.)

*N. J. Cotro-Manes,* of Salt Lake City, for appellant.

*Badger, Rich & Rich,* of Salt Lake City, for respondents.

WOLFE, Justice.

Appellant commenced an action in the district court of Salt Lake County to quiet title to certain real estate, comprising a part of what is known as "Clays Placer," a mining claim located in Bingham Canyon. Appellant claims title to the surface rights of said premises by virtue of the provisions of Sections 104-2-10, 11, and 12, R. S. U. 1933, realing with title to property by adverse possession, reading as follows:

104-2-10: "Where it appears that there has been an actual continued occupation of land under claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

104-2-11: "For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment or decree land is deemed to have been possessed and occupied in the following cases only:

"(1) Where it has been protected by a substantial inclosure.

"(2) Where it has been usually cultivated or improved.

"(3) Where labor or money has been expended upon dams, canals, embankments, aqueducts or otherwise for the purpose of irrigating such lands, amounting to the sum of $5 per acre."

104-2-12: "In no case shall adverse possession be considered established under the provisions of any section of this code unless it shall be shown that the land has been occupied and claimed for the period of seven years continuously, and that the party, his predecessors and grantors have paid all taxes which have been levied and assessed upon such land according to law."

The case was tried to the court without a jury, and judgment was entered in favor of respondents, resulting in this appeal. The assignments of error raise two questions to be determined: (1) Whether appellant has complied with the provisions of the statute with respect to adverse possession and occupation of the land in question; and (2) whether appellant has paid "all taxes which have been levied and assessed upon such land according to law" during the period of adverse possession relied on as the basis for his claim of title.

The facts show that appellant has been in possession of the premises involved in this action since about 1919; that he has erected certain buildings thereon and made certain improvements; that since the year 1927 he has paid certain taxes assessed by the county against either improvements or real estate and improvements on "Clays Placer Copperton Bingham Canyon Below Town."

It further appears that during this time respondents or their predecessors have paid certain taxes assessed by the Board of Equalization and State Tax Commission on "Clays Placer Mining Claim, Lot No. 118," which mining claim embraces the property claimed by appellant.

Appellant's argument is to the effect that the taxes paid by respondents were for the "mining claim" only—that is, the sub-surface or mineral rights—whereas the taxes paid by appellant were for the surface rights and improvements; that since Section 80-5-56, R. S. U. 1933, formerly Sec. 5864, C. L. Utah 1917, provides for separate assessment of property rights where "the surface of lands is owned by one person and the mineral underlying such land is owned by another," the payment by appellant of the taxes assessed by the county against the real estate and improvements complied with the provisions of Section 104-2-12, R. S. U. 1933, hereinabove quoted. On the other hand, respondents assert, and the trial court found, that the taxes paid by them "were lawfully levied and assessed and covered the lands and premises * * * and the whole thereof." They further contend that any other assessment constituted a double assessment and was therefore void; and that appellant could not, by his own acts in living on the surface of respondents' property, erecting buildings and improvements thereon, and causing the same to be assessed by the county, create a separate estate in the land and subsequently claim the same by virtue of his adverse possession and payment of taxes.

However, in our view of the case we do not need to decide whether the assessment by the State Tax Commission of mining claims on the basis of a value of $5 per acre, as provided by Section 80-5-56, R. S. U. 1933, for unimproved mining claims, constitutes a complete assessment of the property so that a person claiming either the surface or sub-surface rights to that property would have to pay the taxes so assessed in order to comply with the provisions of Section 104-2-12, hereinbefore quoted. See *Utah Copper Company* v. *Chandler*, 45 Utah 85, 142 P. 1119; and *Utah Copper Company* v. *Eckman*, 47 Utah 165, 152 P. 178.

Nor do we need to decide whether an individual can by his occupation of the surface of mining property and erection of improvements thereon cause or initiate by those very

acts a separation of the surface from the sub-surface rights so as to necessitate a separate assessment of such property rights as provided for by Section 80-5-56, R. S. U. 1933, on the theory that "the surface of lands is owned by one person [the person occupying the same] and the mineral underlying such lands is owned by another [the person having record title to the mining claim]" (see *Rio Grande Western Railway Company* v. *Salt Lake Investment Co.*, 35 Utah 528, 101 P. 586) ; or whether an individual, who has thus caused a separate assessment of the surface rights of mining property on the theory that such individual is the owner of those surface rights and pays the taxes so assessed can subsequently claim title to the surface rights on the theory that he is an adverse claimant who has occupied the property and paid the taxes thereon as required by the statute. See *Rio Grande Western Railway Company* v. *Salt Lake Investment Co.*, supra. Even though appellant were to prevail as to all three of the problems set forth, nevertheless he cannot prevail on this appeal for other reasons.

The undisputed evidence shows that in the year 1927 the county levied taxes on the "Improvements on Clay's Placer" as follows: Value of city and town lot, $600; improvements, $300; total, $900; total taxes levied, $17.93; taxes paid, November 26, 1927. For the year 1928 the same type of assessment was made by the county, the taxes, totaling $18.93, being paid November 29, 1928. The same procedure was followed in 1929, but the taxes, totaling $18.84 were not paid.

In 1930 the description of the assessment was changed from "Improvements on Clay's Placer" to "R. E. and Improvements," etc. But again the taxes amounting to $19.34 were not paid. The same is true with respect to 1931 (where the taxes assessed totaled $20.24), 1932 (where the taxes were $22.65), and 1933 (where the taxes amounted to $20.73). In 1934 the taxes amounting to $19.41 were paid on December 20, 1934. In 1935 taxes of $18.63 were assessed and were paid on January 7, 1936. In 1936 taxes amounting

to $14.07 were assessed and were paid on December 21, 1936. Suit was filed July 20, 1937, consequently, the rights of the respective parties are determined as of that date.

Regarding the tax assessments for the years 1929, 1930, 1931, 1932 and 1933, the evidence shows that on June 1, 1936, appellant obtainad a tax deed from the county to "R. E. & Imps. on Clays Placer Copperton—Bingham Canyon below town," the deed reciting that it conveyed to appellant all the title of state and other taxing subdivisions obtained by virtue of "tax sales of the years 1929, 1930, 1931, 1932, 1933."

It therefore appears that except for the tax deed which appellant obtained from the county, taxes were paid for only four years before the commencement of the quiet title action, and not for seven as required by statute. It has been repeatedly held in other jurisdictions that the purchase of a tax title or redemption from a tax sale cannot be considered as payment of taxes within the meaning of statutes similar to ours. *Gallo* v. *Gallo,* 31 Cal. App. 189, 159 P. 1058; *Myran* v. *Smith,* 117 Cal. 355, 4 P. 2d 219; *Seymour* v. *Dufur,* 53 Wash. 646, 102 P. 756; *Kennedy* v. *Anderson,* 88 Wash. 457, 153 P. 319; *Webber* v. *Wannemaker,* 39 Colo. 425, 89 P. 780; *Cain* v. *Ehrler,* 33 S. D. 536, 146 N. W. 694; *Wyse* v. *Johnston,* 83 Ark. 520, 104 S. W. 204; *Houston Oil Co. of Texas* v. *Jordan,* Tex Com. App., 231 S. W. 320; *Brownfield* v. *Brabson,* Tex. Civ. App., 231 S. W. 491; *Houston Oil Co. of Texas* v. *Howard,* Tex. Com. App., 294 S. W. 848; *Robertson* v. *Bachmann,* 352 Ill. 291, 185 N. E. 618, 619. See also 2 C. J. S., Adverse Possession, 753, § 177c.

In *Robertson* v. *Bachmann,* supra, the court held: "It is the contention of plaintiffs in error that payment of taxes legally assessed against lot 28 for seven successive years, within the meaning of section 7 of the Limitations Act (Smith-Hurd Rev. St. 1931, c. 83, § 7), is not shown by the evidence. On the other hand, defendant in error contends that, by his redemption from the successive forfeitures to

the state he paid the taxes against the lot within the meaning of the statute. This court has held that neither the purchase of land at a tax sale nor a redemption of land from a tax sale is a payment of taxes within the meaning of the Limitations Act. *Hart* v. *Randolph,* 142 Ill. 521, 32 N. E. 517; *Woodruff* v. *McHarry,* 56 Ill., 218; *Irving* v. *Brownell,* 11 Ill. 402. There appears to be no reason why so far as a construction of the Limitations Act is concerned, a redemption from a forfeiture should be regarded as different from a redemption from a tax sale."

There are two California cases (*Owsley* v. *Matson,* 156 Cal. 401, 104 P. 983; and *Warden* v. *Bailey,* 133 Cal. App. 383, 24 P. 2d 192) holding that a redemption from a tax sale is sufficient to constitute a payment of taxes where such redemption takes place during the period of occupancy. But in the instant case it is not necessary for us to say whether a redemption from a tax sale would be sufficient, inasmuch as the taxes had not only become delinquent and the property gone to tax sale, but also the four year period of redemption had long since expired and title to the property (if there were a valid sale) had completely vested in the county. The tax deed conveyed to appellant the claimed interest of the different taxing units in the property and did not constitute a payment of the taxes on the property within the meaning of the statute.

Therefore, it follows that appellant has not paid the taxes assessed against the property as required by our statute.

The judgment of the lower court is affirmed. Costs to respondents.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.