**203 P.2d 1000**

**McGRAIL v. FIELDS et al.**

**No. 5135.**

Supreme Court of New Mexico.

March 9, 1949.

Geo. T. Harris, A. D. Williams and Theodore R. Johnson, all of Hobbs, for appellant.

John R. Brand and U. M. Rose, both of Hobbs, for appellee.

BRICE, Chief Justice.

This is a statutory action instituted by appellant to quiet title to real property situated in the city of Hobbs, New Mexico. The defendant (appellee) Helen Fields, denied that plaintiff had title to the property in suit, and specially pleaded the ten year statute of limitation.

The trial court's findings of fact and conclusions of law are as follows:

"(1) That W. F. Roark and P. L. Hubby, title predecessors of Helen Fields for more than ten years following May 29, 1931, made an actual visible appropriation of the lands described as the South 40 feet of Lots 1 and 2, Block 50, Original town of Hobbs, Lea County, New Mexico, together with all improvements thereon, and that the said W. F. Roark and P. L. Hubby commenced and continued said appropriation through color of title and claim of right inconsistent with and hostile to the claims of all others, and that for such period they continuously paid all taxes which during that period were levied on the lands above described.

"(2) That this action was not brought within the time allowed by law within which to bring same, and that plaintiff is barred by reason of failure to bring said action within the time provided by law.

"(3) That on May 29, 1931, G. J. Moore executed and delivered to W. F. Roark a warranty deed conveying the property involved herein for a consideration of $900.-00. W. F. Roark and wife thereafter conveyed said property to P. L. Hubby, and that said P. L. Hubby and wife conveyed said property to the defendant Helen Fields; that at the time of the execution of the warranty deed to W. F. Roark, G. J. Moore was a married man and that the property involved was community property; that G. J. Moore surviving his wife succeeded to her interest in said property.

"From the foregoing Findings of Fact the Court makes the following Conclusions of Law:

"(1) That the defendant and cross-complainant Helen Fields, as a matter of law, should prevail.

"(2) That plaintiff was barred from commencing any action adverse to the claim of title of P. L. Hubby and his grantee after May 29, 1941.

"(3) That the warranty deed delivered by G. J. Moore to W. F. Roark operated to pass all title to the property thereafter acquired by G. J. Moore, and the plaintiff claiming under said G. J. Moore is barred and estopped from denying the title of the grantee, to-wit, W. F. Roark, under the original warranty deed.

"(4) Judgment should be entered dismissing the complaint, quieting title in cross-complainant and against plaintiff.

"(5) That all requested Findings of Fact and Conclusions of Law inconsistent herewith are hereby dismissed. To all of which the plaintiff is allowed an exception."

The following statement of facts made in appellant's brief, appellant's brief is accepted by appellee:

"On the 29th day of May, 1929, G. J. Moore, a married man,—his wife not joining in the conveyance—attempted to sell and convey by deed, with full covenants of warranty, ·the above described property

(property in suit) to W. F. Roark. It was the community property of G. J. Moore and his wife. The consideration recited in the deed was $900.00.

"After such attempted conveyance and prior to November 28, 1945, the wife of G. J. Moore died and was survived by her husband. Subsequent to the death of the wife and prior to November 28, 1945, G. J. Moore died and was survived by W. L. Moore, a son and sole and only heir at law of G. J. Moore. On November 28, 1945, W. L. Moore, by quit-claim deed, conveyed the property to plaintiff, M. H. McGrail.

"W. F. Roark went into possession of the premises at the time of the attempted conveyance thereof to him by G. J. Moore on May 29, 1929; and the court found that W. F. Roark and his successors continued such possession for a period of ten years after May 29, 1929. On March 30, 1935, W. F. Roark and wife conveyed the premises to P. L. Hubby, the deed being filed for record on May 11, 1937. The property was conveyed by P. L. Hubby and wife to Helen Fields, appellee, on October 23, 1945.

"The property was sold for taxes for the year 1936, and Tax Sale Certificate No. 2697 was issued to C. M. Aldred. Redemption was made therefrom by W. F. Roark by Redemption Certificate No. 1552. It was again sold for taxes for the year 1942, to the State of New Mexico, and Tax Sale Certificate No. 6609 was issued and as- signed to B. L. Huchton. Redemption was made by M. B. Johnson by Redemption Certificate No. 3419."

It is apparent from the the record that Johnson was acting as agent for Hubby in redeeming this property from tax sale.

It is asserted that as defendant claims title through mesne conveyances from W. F. Roark, who obtained his claim of title by a deed from G. J. Moore which was not signed by Moore's wife, the property at the time being the community property of Moore and wife, that Moore's deed to Roark was void, and that defendant's claim of title under and through Roark is likewise void.

Defendant counters with the assertion that Moore's· deed to Roark was effective to estop Moore after the death of Mrs. Moore, and after his death his only heir at law, to claim title adversely to Moore's deed; that this deed conveyed to Roark, Moore's after acquired title, which became vested in him upon his wife's death by operation of law.

That part of the New Mexico statute involved is as follows: "* * * any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect * * *." Sec. 65-403, N.M.Sts.1941.

■ Appellee admits that the question was determined adversely to her conten-

tions here, in Jenkins v. Huntsinger, 46 N. M. 168, 125 P.2d 327, but cites and quotes from the dissenting opinion of Mr. Justice Bickley in that case, which is in line with her contentions and the trial court's decision; and suggests that the Jenkins case should be overruled.

. In that case it was determined that the husband had attempted to convey community real property by his deed alone. Subsequently the parties were divorced, and he became the sole owner of half of it. We held that the deed was absolutely void, and that it did not convey the part of the property allotted to the husband in the division as subsequently acquired property. We reviewed the authorities at great length, and concluded that the deed being absolutely void, the grantor conveyed nothing by his deed and that he was not estopped to deny its validity.

It is contended that we should overrule the Jenkins case. We cited and quoted from many authorities to support our conclusion in that case, but none of the Texas cases were mentioned, which it is asserted, support defendant. We will review the Texas decisions only.

·· The Constitution and laws of Texas on the subject are as follows:

" * * * No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition. of defeasance shall be void." Art. 16, Sec. 50, Const. of Texas, Vernon's Ann. St.

"The homestead, whether the separate property of the husband or wife, or the community property of both, shall not be disposed of except by the joint conveyance of both the husband and the wife, except where the husband is insane or has permanently abandoned the wife * * *." Art. 4618, Ch. 3, Title 75, Vernon's Civil Statutes.

Neither the Texas Constitution nor statute provides that deeds conveying homesteads by husband or wife alone are void; whereas the Constitution provides that "No mortgage * * * on the homestead shall ever be valid * * * whether such mortgage * * * shall have been created by the husband alone, or together with his wife".

In Texas the husband may convey community property other than the homestead, without the wife's joinder or consent. Regarding the effect of a deed made by the husband alone to the homestead, the Supreme Court of Texas in Marler v. Handy, 88 Tex. 421, 31 S.W. 636, 639, said: "The deed made by Marler to Handy was not

void under our constitution, and, though inoperative so long as the property was occupied by him and his wife as a home, yet when he and his family removed therefrom to another homestead, he acting in good faith for the best interests of himself and his family, the deed became operative to vest title in Handy, and the property could not be recovered by the husband, because he would be estopped by the deed, and it could not be recovered by the wife, because her homestead right ceased when her husband acquired and she removed with him to another homestead."

This holding is limited somewhat in Stallings v. Hullum, 89 Tex. 431, 35 S.W. 2, 3, in which the Texas court said: "What is prohibited by law is as clearly invalid as if it had been declared void. The alienation of the homestead by a married man without the consent of the wife, evidenced in the manner required by law, being prohibited, his attempted conveyance without her joining in the deed is void, in so far as it in any manner affects her interests. * * * Under similar statutory and constitutional requirements, it is very generally held in other states that the conveyance by the husband alone is void (citing authorities). * * * The decision in that case [Irion v. Mills, 41 Tex. 310] is in harmony with the very recent case of Marler v. Handy, 88 Tex. 421 [31 S.W. 636; Id., Tex.Civ.App.], 32 S.W. 162, in which it was held that the deed to the homestead executed by the husband alone operated by way of estoppel to pass the title to the grantee, upon the acquisition by the grantor of a new homestead for his family, provided such acquisition was not made with intent to defraud the wife of her interest in the former homestead. The wife having ceased to have any interest in the former homestead as such, no reason was seen to exist why the deed should not take effect. It is said in that case that the deed is not void; but it was not meant that it was valid as to the wife, or that it could in the slightest manner affect her rights before a new homestead was acquired. The fact that it was held in those cases that the deed was not so far void as to prevent it from operating by way of estoppel against the husband, when the wife's interests may cease, does not justify the conclusion that it was to have any operation whatever so long as her right of homestead in the property should continue to exist."

The apparent intent of the Constitution and statute regarding the power to sell homesteads in Texas, was to protect the wife so that she could not be deprived of a homestead, whether it was community or the husband's separate property, without her consent. If the homestead is abandoned the deed, which is not void except as it affects the homestead, becomes operative at least as an estoppel, because it could not affect the wife's interest or right to a homestead. "But, even if it be true, the

property was the homestead of the McDonalds, and, if it be true, the husband without the wife's consent executed his deed in which the wife did not join, yet the property appearing to be community, such deed would not be an absolute nullity, but would become effective upon the subsequent abandonment of the property for homestead purposes." McDonald et al. v. Simons, Tex.Com.App., 280 S.W. 571, 573.

If, therefore, the wife has no separate interest in real estate the husband's deed will transfer the property. A deed by the husband alone will not convey the homestead, but it is effective as an estoppel if the homestead is later abandoned before it is sold. See Southwestern Lumber Co. v. Evans, Tex.Civ.App., 275 S.W. 1078.

But a mortgage made in violation of the constitutional provision to the effect that a mortgage of a homestead "shall never be valid" whether such mortgage shall have been created by the husband alone or together with his wife, is held to be utterly void and not effective, even if the homestead is thereafter abandoned.

It was held in Anglin v. Cisco Mortg. Loan Co., 135 Tex. 188, 141 S.W.2d 935, 938, that the mortgage of a homestead by the husband and wife was utterly void and that notwithstanding the homestead was subsequently abandoned the instrument was not given life thereby as is the husband's deed under like circumstances. The Supreme Court stated: "Under the present Constitution the fact that the homestead owners may have removed from the homestead or that they died subsequent to the execution of such a mortgage or pretended deed, will not in either instance make that valid which the Constitution has expressly denounced as being forever void."

Numerous Texas authorities are cited in support of this statement.

From these observations we conclude that as the Texas Constitution and statute regarding the sale of homesteads do not provide that the deed is void, it is void only so long as it is a homestead. But on the other hand, the Constitution provides that "No mortgage * * * on the homestead shall ever be valid," and it means just what it says. Unlike the deed it is not effective after the homestead is abandoned. The distinction is obvious. It is not provided that the husband's deed to the homestead is void; but it does provide that a purported mortgage of the homestead shall never be valid. In New Mexico the provision, Sec. 65-403, N.M. Sts.1941, "that any transfer or conveyance attempted to be made on the real property of the community by either husband or wife alone shall be void and of no effect," as forcefully describes an invalid deed as the provision of the Texas Constitution which we have quoted, describes an invalid mortgage.

There is nothing in the Texas decisions that convinces us that we should overrule the Jenkins case. They seem to support it.

█ Our decision in the Jenkins case was handed down after a most· careful consideration of every question here advanced. We are entirely satisfied with it, and are not disposed to overrule it. It has now become a rule of property and if we were doubtful of its soundness we would not be inclined to disturb its doctrine.

The trial court determined that the plaintiff's claim of title was barred by the ten year statute of limitation, which is as follows: "No person or persons, nor their children or heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments, against any one having adverse possession of the same continuously in good faith, under color of title, but within ten (10) years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued, and all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments so held, shall be commenced within ten (10) years next after the cause of action therefor has accrued: * * * 'Adverse possession' is defined to be an actual and visible appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another; and in no case must 'adverse possession' be considered established within the meaning of the law, unless the party claiming adverse possession, his predecessors or grantors, have for the period mentioned in this section continuously paid all the taxes, state, county and municipal, which during that period ·have been levied upon the land or interest claimed, whether assessed in his name or that of another." Sec. 27-121 N.M.Sts 1941.

The plaintiff asserts that defendant did not "continuously" pay all the taxes which during the period of claimed limitation had been levied upon the land in suit as required by the limitation statute. This contention is based upon the facts that the property was sold for the taxes of 1947 and again for the taxes of 1942, but was redeemed in each case by the defendant's predecessor in title or his agent. The taxes were otherwise "continuously" paid.

The question is whether the redemption of property from a tax sale is payment of taxes.

The weight of authority supports plaintiff's contention. Pueblo de Taos v. Gusdorf, 10 Cir., 50 F.2d 721; Cain v. Ehrler, 33 S.D. 536, 146 N.W. 694; Plowman v. Morden, 33 S.D. 593, 146 N.W. 914; Robertson v. Bachmann, 352 Ill. 291, 185 N.E. 618; Harlan v. Douthit, 379 Ill. 15, 39 N. E.2d 345; Morris v. Gregory, 80 Kan. 626, 103 P. 137; Marwalt Realty Co. v. Greene,

224 Wis. 1, 271 N.W. 648; Dunnington v. Hudson, 217 Mo. 93, 116 S.W. 1083; Walsh v. Certain Lands, 209 Ark. 320, 190 S.W. 2d 447; Winkle v. Neitzel, 305 Mich. 40, 8 N.W.2d 904; Tremmel v. Mess, 46 Wash. 137, 89 P. 487; Aggelos v. Zella Min. Co., 99 Utah 417, 107 P.2d 170, 132 A.L.R. 213; See annos. 132 A.L.R. p. 248.

The California courts in construing a statute in language almost identical with ours, concluded that redemption from tax sales is "payment of taxes" as the phrase is used in the California limitation statute. Owsley v. Matson, 156 Cal. 401, 104 P. 983; Gray v. Walker, 157 Cal. 381, 108 P. 278; Devlin v. Powell, 67 Cal.App. 165, 227 P. 231; Blume v. MacGregor, Cal.App., 144 P.2d 375. But see Myran v. Smith, 117 Cal.App. 355, 4 P.2d 210, and Gallo v. Gallo, 31 Cal.App. 189, 159 P. 1058, in which it is held that redemption from a tax sale is not a payment of taxes. Notwithstanding the California decisions generally are opposed to the weight of authority, (with the exception of the holding in the Myran and Gallo cases, supra, apparently an oversight) the Owsley case has been consistently followed. The Blume case, supra, was decided January 4, 1944. The Myran and Gallo cases followed McDonald v. McCoy, 121 Cal. 55, 53 P. 421, which had been overruled by the Owsley case, supra.

We come now to consider the New Mexico cases.

In Kershner et al. v. Sganzini et al., 45 N.M. 195, 113 P.2d 576, 579, 134 A.L.R. 1290, which was a suit to quiet title, the question was whether a tax sale was valid. We said in that case:

"In Cox v. Shipe, 44 N.M. 378, 102 P.2d 1115, 1116, it was probably implied, though not directly held, that redemption of outstanding certificates in the hands of the treasurer is nothing more than 'paying taxes'. * * *

"In Cox v. Shipe, supra, we further pointed out in discussing the statutory requirements for redemption that: 'It thus results that the holder of a tax sale certificate for any year, issued under authority of the 1934 act, must promptly redeem from all outstanding certificates or else expose his own certificate to redemption by some rival holder of a certificate for another year's taxes.'

"We were there saying, to employ other words, that such holder must pay all delinquent taxes, which means also that he must redeem all outstanding certificates, at least, such as are still held by the state, before he may receive his deed. Quite clearly we were making no distinction between paying delinquent taxes and redeeming from outstanding tax sale certificates.

"While there is much authority to the contrary, we believe that the better reason-

ed cases support the view which we now definitely adopt, that, under circumstances like those here presented, redemption of tax sale certificates still held by the state is payment of taxes."

This court did not construe the limitation statute in that case, and the authorities cited did not support the question here presented, although we did define the phrase "payment of taxes."

Turner v. Sanchez, 50 N.M. 15, 168 P. 2d 96, 99, 164 A.L.R. 1280, was an action in ejectment. The plaintiff claimed under a tax deed; among the defenses pleaded was that the land had been redeemed from the tax sale. While the statute of limitation was not involved, we stated:

"It has been asserted, and we do not doubt, that one who has acquired title to land by adverse possession has a legal and/or equitable right in land sold for taxes sufficient upon which to predicate the right to redeem from a tax sale and we think the right also extends to one who may not yet have completed the prescriptive procedure, if he is in good faith on his way. Our law gives one the right to acquire title by adverse possession and this right is capable of protection by means of redemption from tax sale.

"Fortunately, the trial has been blazed for correct construction of our statute. In Fernandez Co. v. Montoya, 42 N.M. 524, 82 P.2d 289, 118 A.L.R. 573, we decided:

"'Statutes providing for redemption from tax sale are to be construed liberally in favor of the redemptioner.'

*   *   *   *   *   *

"Now, under our tax laws, a person has a right to acquire title to land by adverse possession. He must found this right, among other factors, upon color of title and possession and the payment of taxes. It would seem that since payment of taxes is a factor, it is no far cry to say that he has such an interest as will permit him to redeem from a tax sale, since paying the redemption money is in itself a species of payment of taxes. See Clark v. Trammell, 208 Ark. 450, 186 S.W.2d 668, and Kershner v. Sganzini, supra."

In the principal case of Owsley v. Matson, supra [156 Cal. 401, 104 P. 984], the Supreme Court of California said: "It is claimed that this (redemption) was not a sufficient payment of the taxes; that, in order to make his possession adverse within the law (Code Civ.Proc. § 325), the party in possession must pay the taxes, either before they become delinquent, or, at all events, before the property is sold therefor under the law. There is a dictum to this effect in McDonald v. McCoy, 121 Cal. 73, 53 P. 421. In that case, however, it appeared that the person in possession had failed to pay any taxes during his possession, and that the redemption took place after he had ceased to have possession or

to claim any right thereto. * * * But where, as in the present case, the tax has been allowed to become delinquent and a sale has taken place, and, so far as appears, a redemption has been made thereof, while the party or his successor in interest was in undisturbed possession, and all this is done in good faith, we see no reason why the same should not be held to operate as a payment, and we think it is sufficient to bring the occupant within the terms of the statute which requires him to pay the taxes upon the property claimed."

The California statute provides in substance, that in no case shall the adverse possession be considered established unless it be shown (among other requirements) that the party so claiming has paid all taxes which have been assessed and levied on the land. The New Mexico statute provides that adverse possession is not established unless the party claiming it, etc., has for the ten years "continuously paid all taxes, state, county and municipal, which * * * have been levied on the land * * *." There is no substantial difference in the respective requirements.

Our holding in the New Mexico cases mentioned, is not a rule of property, because the specific question here discussed was not involved. We are constrained to follow the general rule. We therefore hold that a redemption of property from a tax sale is not "payment of taxes" in the sense that phrase is used in our limitation statute here construed.

The defendant, by counter assignment, asserts that the trial court erred in failing to hold that the plaintiff was estopped from claiming title to this property by his laches.

It did not pass upon the question of laches, probably because it was held that the plaintiff's cause of action was barred by the ten year statute of limitation. We have concluded that inasmuch as it will be necessary to reverse this case, we should grant a new trial, and that it be confined to a determination of one question; that is, whether the defense of laches is available to the defendant. The trial court may allow amendments to pleadings and hear further testimony on this one question.

The decree is reversed and the cause remanded to the district court with instructions to set aside its decree and grant to plaintiff a new trial, and to confine such trial to the determination of whether the plaintiff's claim is barred by the laches of himself and predecessors in title. If the defense of laches should be sustained a decree then should be entered for defendant; otherwise the decree should be for plaintiff. It is so ordered.

LUJAN, SADLER, McGHEE and COMPTON, JJ., concur.