379 P.2d 443

**Charles N. BATTS, Dan L. Razatos, Phillip D. Pomonis, Ted Ipiotis, Frank C. Dressman and Agnes Dressman, Plaintiffs-Appellants,**

**v.**

**Saloma S. GREER, Defendant-Appellee.**

**No. 7115.**

Supreme Court of New Mexico.

Feb. 28, 1963.

Kellahin & Fox, Santa Fe, for appellants.

Seth, Montgomery, Federici & Andrews, Santa Fe, for appellee.

D. A. MAC PHERSON, Jr., District Judge.

This is a suit to establish an easement by prescription, and both sides admit usage over ten years to have been open, notorious, uninterrupted and peaceable. The determinative issue is whether or not the use was permissive.

By document executed July 16, 1918, the predecessors of plaintiff Batts and defendant Greer, being T. W. Hanna and Nathan Salmon, respectively, executed an agreement in which they purported to establish correlative easement rights in a common alleyway which would serve the rear entrances of Hanna's buildings facing Lincoln Avenue and Salmon's buildings facing San Francisco Avenue in the center of the business section of Santa Fe, New Mexico. Both Salmon and Hanna were married men at the time and both purported to grant easement rights in community property without having their respective wives join therein. On October 28, 1938, the document was duly recorded in the office of the county clerk of Santa Fe County, New Mexico. The reason for a twenty year delay in recording the same was not disclosed.

Both sides concede, and the court below held, that the agreement of July 16, 1918 was entirely void, being violative of Chapter 84, Laws of 1915, now found as Section 57-4-3, N.M.S.A.1953 Comp., which decrees that "any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect, * *."

The present parties and their predecessors never questioned the validity of the 1918 agreement, its invalidity apparently first being discovered and recognized after institution of the present lawsuit. The easement agreement provides that the same will terminate, and become null and void, should Hanna (plaintiff Batts' predecessor) "commence the construction of a permanent building not less than two stories in heighth" on certain of Hanna's then unoccupied land (over which the easement was granted).

The court below found that, in 1957, such a two-story permanent building was constructed on the unoccupied land described in the 1918 agreement.

The two-story building was in fact erected not by the plaintiff Batts himself, but by certain of his tenants who operated a restaurant. On being advised by them in 1957 of a desire to enlarge their kitchen and being shown a rough sketch of the plan, Batts required that they revise it so as not to occupy the "unoccupied" land and thereby cause a dispute over the 1918 agreement. The improvements were nevertheless made, apparently without Batts' knowledge. However, the parties continued to use the alleyway under the presumed authority of the agreement until April of 1961, when defendant closed and blocked the alleyway.

Both of the original parties to the agreement were deceased at the time of trial and, insofar as the record shows, the first communication or contact between the parties concerning the easement occurred on July 28, 1959 when a conference was held in the office of defendant's then counsel, the Honorable David Chavez, Jr., wherein the violation of the easement agreement was the subject of discussion, again both parties raising no question concerning the validity of the agreement. On the same date, defendant's said counsel wrote a letter to plaintiff Batts, confirming the conference and notifying him that his rights enjoyed under the 1918 agreement were terminated by reason of construction of the two-story building.

Once again, no action was taken following this conference and letter, and the easement continued to be used until, by letter dated April 21, 1961, plaintiff Batts was notified that the easement would be closed permanently on April 24, 1961. Apparently on that date, or sometime later that month, a permanent wall was erected and did block off and prevent further use of the easement. Plaintiff Batts, in seeking to open the alleyway, is joined in the suit by his tenants, all of whom seek damages from the defendant.

The court below found for the defendant, holding that the use of the easement over the years had been permissive; that while the 1918 agreement was void, nevertheless both parties considered it valid; that the use of the easement was at all times, since 1918, with the full knowledge and free consent and acquiescence of the defendant and her predecessor in title, under an erroneous conception and construction of the 1918 agreement; that until at least 1959, no use of the easement was hostile or adverse; that defendant lawfully terminated use of the easement in 1961; that, accordingly, plaintiffs failed to show ten years or more of adverse use, and that plaintiffs' complaint should be dismissed.

Plaintiffs, in seeking to reverse the court below, place a strong reliance on Jenkins v. Huntsinger, 46 N.M. 168, at page 180, 125 P.2d 327, at page 334 (1942), wherein our court construed Chapter 84, Laws of 1915, holding the word "void" as therein used means a complete nullity rather than "voidable," plaintiff quoting the court's language:

"We start with nothing, and we wind up with nothing, so far as we may predicate a conveyance upon the attempted deed * * *."

In 1949, our court, when asked to overrule the Jenkins case, particularly in view of Mr. Justice Bickley's lengthy dissent therein, had this to say in McGrail v. Fields, 53 N.M. 158, 203 P.2d 1000:

"Our decision in the Jenkins case was handed down after a most care-

ful consideration of every question here advanced. We are entirely satisfied with it, and are not disposed to overrule it. It has now become a rule of property and if we were doubtful of its soundness we would not be inclined to disturb its doctrine."

Plaintiffs argue that since the 1918 agreement is a nullity, any words or acts arising thereunder are likewise a nullity and cannot be a basis for permissiveness; that a successor in title like plaintiff Batts is not estopped to claim adversely to the attempted grant; that in the absence of proof that the use was permissive, the use is presumed to be adverse and hostile, and after ten years a conclusive presumption of a grant arises; and that an adverse user arises where the easement agreement is invalid but, nevertheless, the user is exercised.

It is our conclusion that the court below was correct. A careful analysis of our decisions in the Jenkins and McGrail cases will disclose that the documents in question were decreed to be void insofar as they purport to effect a conveyance. The decisions stop here. In fact, the pertinent statute speaks of "any transfer or conveyance" of the property. Beyond that, the statute and the cases do not go. In the Jenkins case, the court specifically recognizes that the deed, void for conveyance purposes, nevertheless properly may become the subject of a suit for breach of contract and breach of warranties, citing our earlier case, Conley v. Davidson, 35 N.M. 173, 291 P. 489, which specifically does so hold.

As we appraise the present suit, defendant uses the 1918 agreement for one purpose only, viz., as evidence that, at the inception, the easement was permissive. Appellee does not attempt to specifically enforce the agreement but for a collateral purpose, viz., to produce evidence of permissiveness. To quote from appellee's brief:

"* * * Both parties to the agreement are now deceased and can not testify, but the invalid agreement stands as mute testimony as to their intentions regarding the use of the easement."

The use being permissive, the erection of the two-story building was immaterial except that it probably did arouse defendant to the action which ultimately caused her to close the alleyway. As the court below indicated, the 1959 conference between the parties in the office of defendant's counsel probably marked the termination of the permissive use, which thereafter definitely ended when the alleyway was closed.

"Any competent and relevant evidence, is admissible to prove or dis-

prove an easement by prescription." 28 C.J.S. Easements § 69, p. 739.

■ The existence of the 1918 agreement cannot be denied. Except for its inherent defect as a conveyance of easement, the terms are fairly plain and the essential fact that the use of the easement was founded on permissive use is crystal clear.

Since the use of the easement at all times, from its inception until at least the 1959 conference, was permissive, plaintiffs are unable to sustain their claim of adverse possession. This court, in Hester v. Sawyers, 41 N.M. 497, 71 P.2d 646, 112 A.L.R. 536, said:

"A prescriptive right cannot grow out of a strictly permissive use, no matter how long the use. 1 Thompson on Real Property § 471."

Clearly, the court below had the right to make a finding as to when the permissive nature of the use terminated and this the court did, finding plaintiffs could not show ten years or more of adverse use.

Both appellant and appellee argue other points, deemed immaterial to our decision herein. The decision of the court below is affirmed.

It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.